JOHNSTON COUNTY v. PEGGY K. McCORMICK, DOUGLAS H. McCORMICK
AND FARM BUREAU INSURANCE COMPANY

No. 8211SC1204

(Filed 15 November 1983)

1. **Social Security and Public Welfare § 2— assignment of insurance rights to Medicaid provider—effect of statute**

   The statute providing that the acceptance of Medicaid assistance constitutes an assignment to the State of the recipient's "right to third party insurance benefits to which he may be entitled," G.S. 108-61.4, does not apply to a tort-feasor's liability insurance policy but applies only to the recipient's own insurance coverage.

2. **Social Security and Public Welfare § 2— subrogation rights of Medicaid provider—liability insurance carrier's payment to recipient—carrier's absence of notice of subrogation right**

   An automobile liability insurance carrier who paid, on behalf of its tort-feasor insured, a claim to which a Medicaid provider has become subrogated under G.S. 108-61.2 may not be held liable to the Medicaid provider for the sum paid in the absence of actual or constructive notice by the insurance carrier of the Medicaid provider's subrogated right of recovery against its insured.

APPEAL by plaintiff from *Battle, Judge.* Judgment entered 3 August 1982 in JOHNSTON County Superior Court. Heard in the Court of Appeals 17 October 1983.

Plaintiff Johnston County brought suit in June, 1981 against Douglas McCormick, a seventeen-year-old Medicaid recipient; his mother, Peggy McCormick; and Farm Bureau Insurance Company, which had paid nearly $30,000.00 to McCormick in settlement of his personal injury claim against one of Farm Bureau's policyholders.

The events giving rise to the county's suit began in February, 1978, when Douglas McCormick was injured while a passenger in a car driven by Farm Bureau's insured, Timothy Grimes. McCormick sued Grimes and the settlement which led to Farm Bureau's payment to McCormick was reached in late 1980. Meanwhile, in September 1978, Mrs. McCormick applied for Medicaid to assist in paying her son's medical bills. Medicaid, as administered by plaintiff, eventually paid out $13,366.25 in benefits on McCormick's behalf. When plaintiff learned that McCormick

had settled his personal injury claim it sought reimbursement of the Medicaid payments from defendants jointly and severally.

Defendant Farm Bureau answered and asserted as an affirmative defense that it had settled McCormick's claim against its insured without notice of plaintiff's subrogation rights.

After the pleadings were joined, plaintiff moved for summary judgment. In support of its motion, plaintiff submitted interrogatories served by plaintiff on Farm Bureau and the affidavit of Donald J. Best, Chief of the Third Party Recovery Section of the North Carolina Department of Human Resources.

Plaintiff's motion for summary judgment was followed by Farm Bureau's motion for summary judgment. Farm Bureau's motion was supported by the affidavit of Raymond Boykin, its Senior Field Claimsman, who was responsible for the investigation, negotiation, and settlement of McCormick's claim against its insured.

From the trial court's grant of summary judgment against it, plaintiff appeals.

*W. A. Holland, Jr. for plaintiff.*

*Mast, Tew, Armstrong & Morris, P.A., by L. Lamar Armstrong, Jr., and George B. Mast, for defendant.*

WELLS, Judge.

The threshold issue we must decide in this case is whether plaintiff's appeal is premature. Since summary judgment was allowed for fewer than all defendants and the trial court's judgment did not contain a certification pursuant to G.S. § 1A-1, Rule 54(b) of the Rules of Civil Procedure that there was "no just reason for delay," plaintiff's appeal is premature unless the summary judgment for defendant Farm Bureau affected a substantial right under G.S. § 1-277(a) and G.S. § 7A-27(d)(1). For reasons which will be stated in this opinion, we hold that a substantial right of plaintiff was affected and that the appeal is not premature.

We begin our decision on the merits by calling attention to two statutory provisions dealing with the rights of agencies of state government to recover sums paid for medical care on behalf of Medicaid recipients. The pertinent statutes in force to be con-

strued under the facts in this case were G.S. §§ 108-59, 108-60, 108-61.2, and 108-61.4.[1] The statutes have been recodified as G.S. §§ 108A-54, 108A-55, 108A-57, and 108A-59 respectively.

G.S. § 108-59 provided for the creation of a Medicaid fund and G.S. § 108-60 provided for methods of payment from the fund. G.S. §§ 108-61.2 and 108-61.4 are directly at issue in this case, and we will therefore set them out, in pertinent part, verbatim.

§ 108-61.2. *Subrogation rights; withholding of information a misdemeanor.* —

(a) To the extent of payments under this Part, the county involved shall be subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of assistance under this Part against any person. It shall be the responsibility of the county commissioners, with such cooperation as they shall require from the county board of social services and the county director of social services, to enforce this section through the services of the county attorney in accordance with attorneys' fee arrangements approved by the Department of Human Resources. The United States and the State of North Carolina shall be entitled to share in each net recovery under this section. Their shares shall be promptly paid under this section and their proportionate parts of such sums shall be determined in accordance with the matching formulas in use during the period for which assistance was paid to the recipient.

(b) It shall be a misdemeanor for any person seeking or having obtained assistance under this Part for himself or another to willfully fail to disclose to the county department of social services or its attorney the identity of any person or organization against whom the recipient of assistance has a right of recovery, contractual or otherwise.

---

1. We note that while G.S. § 44-49 creates a lien in favor of any person, corporation or governmental body which has provided medical care, upon personal injury damages recovered in civil actions by patients who have received medical treatment, there is no provision for creation of a lien where the patient settles with the wrongdoer, instead of filing a civil action. Thus, G.S. § 44-49 is inapplicable to the case before us since the record does not indicate that McCormick at any time filed an action against Grimes.

§ 108-61.4. *Acceptance of medical assistance constitutes assignment to the State of right to third party insurance benefits; recovery procedure.* —

(a) By accepting medical assistance, the recipient shall be deemed to have made an assignment to the State of the right to third party insurance benefits to which he may be entitled.

(b) The responsible State agency shall disseminate the contents of this bill to all involved parties; the county government agencies, all Medicaid eligibles, all providers, and all insurance companies doing business in North Carolina.

. . .

Although in its complaint, plaintiff alleged "[t]hat pursuant to G.S. § 108-61.2, the State of North Carolina is subrogated to all rights of recovery, contractual or otherwise, of the beneficiary of assistance and brings this action pursuant to G.S. § 108-61.2 against Peggy K. McCormick and Douglas H. McCormick," it is clear from plaintiff's complaint, motion for summary judgment, briefs and oral arguments, that plaintiff based its action against Farm Bureau on the provisions of G.S. § 108-61.4. Plaintiff's central argument is that G.S. § 108-61.4 gave plaintiff a statutory lien against McCormick's rights to payment from Grimes through his insurance carrier, Farm Bureau. We do not reach the question of whether G.S. § 108-61.4 creates a statutory lien because we hold that G.S. § 108-61.4 is not applicable to the facts in this case.

[1]   In insurance law, the term "benefits" describes the contract coverage as the obligation of the insurer to the insured in the event of a loss by or injury covered by the policy. *See e.g.,* G.S. §§ 58-251.1(b)(4), (5); -251.5(a); -251.6(a); -254.1; -254.2; -254.4(e), (f); -262.14(1)(a), (6); and particularly -262.16 which establishes benefit standards for Medicaid supplement insurance; and G.S. § 58-367(1). It is clear therefore from the language of the statute that G.S. § 108-61.4 was intended as the vehicle through which the state might obtain an assignment of a benefit recipient's rights to collect the same benefits (i.e., medical expenses) from the recipient's *own* insurance coverage. It does not apply to a tort-feasor's liability insurance policy.

[2]   The question, so narrowed, which is dispositive of this appeal, is whether a liability insurance carrier who pays, on behalf of its insured, a claim to which a Medicaid provider has become

subrogated under G.S. § 108-61.2 may be held liable to the Medicaid provider.

The general rule in insurance subrogation cases, which are clearly analogous to the circumstances under review in this case, is that payment by a tort-feasor of an injured party's claim without notice of a subrogee's interest is a complete defense to a subrogee's claim against the tort-feasor. *See* Annot. 92 A.L.R. 2d 102, § 5 (1963 & 1983 Supp.). *See also Insurance Co. v. Bottling Co.*, 268 N.C. 503, 151 S.E. 2d 14 (1966), where the court stated the general rule, but held that where the evidence showed that the tort-feasor settled with knowledge of the subrogee's interest, such settlement was not a defense to the subrogee's claim. *See also Insurance Co. v. Spivey*, 259 N.C. 732, 131 S.E. 2d 338 (1963).

Applying these principles of the law of subrogation to the case at bar, we are persuaded that if Farm Bureau settled with McCormick without notice, actual or constructive, of plaintiff's subrogated right of recovery against Grimes, then plaintiff cannot recover either against Grimes or Farm Bureau the sums it paid on McCormick's behalf. We hold that the forecast of evidence before the trial court clearly shows lack of such notice and that, therefore, summary judgment was properly entered for Farm Bureau.

In its complaint, plaintiff alleged that it had paid the following sums on McCormick's behalf:

| PROVIDER | AMOUNT MEDICAID PAID |
|---|---|
| Johnston Memorial Hospital | $ 1,341.40 |
| Charlotte Memorial Hospital | 1,873.85 |
| Charlotte Rehabilitation Hospital | 3,705.45 |
| Charlotte Memorial Hospital | 348.27 |
| Rehabilitation Associates | 38.52 |
| Charlotte Rehabilitation Hospital | 5,707.36 |
| Dr. Manuel Versola | 57.96 |
| Medical Transport Service | 48.00 |
| Dr. Edwin Martinat | 80.33 |
| Forsyth Memorial Hospital | 55.45 |
| Carroll Pharmacy; Revco Drugs; Johnson's Drug Co.; Pruett Drug Co.; Powell's Pharmacy; and Mann's of Asheboro, N.C. | 109.66 |

In response to plaintiff's interrogatories, Farm Bureau listed three bills for medical services in its possession when it settled with McCormick:

| | |
|---|---|
| Wake Radiology Consultants, P.A. | $    133.00 |
| Cape Fear Valley Hospital | 21,103.38 |
| Raleigh Neurosurgical Clinic | 760.00 |

All of these bills were attached to Farm Bureau's response. None of them bear any indication on their face that any of the charges had been paid by anyone or that there were any sources available to the provider of the services for payment of the bills except the patient. None of them shows any Medicaid information of any kind. In his affidavit in support of Farm Bureau's motion, Raymond Boykin stated the following:

I am the Senior Field Claimsman for North Carolina Farm Bureau Mutual Insurance Company.

I am familiar with the case of Johnston County vs. Peggy K. McCormick, Douglas H. McCormick and Farm Bureau Insurance Company. I was responsible for investigation, negotiations and settlement of the original claim made on behalf of Douglas H. McCormick. His claim was for personal injuries sustained in an automobile accident. I have completely reviewed North Carolina Farm Bureau Mutual Insurance Company's file regarding this matter and I find no notice or information in the file, or otherwise, that the injured party (Douglas H. McCormick) was receiving assistance through the Department of Human Resources. I find no letter, or other documentation in the file which ever put North Carolina Farm Bureau Mutual Insurance Company on notice prior to its disbursement of the monies paid in full settlement of the claim, that Johnston County was claiming a lien pursuant to G.S. 108-61.4. In addition, I do not remember ever discussing the fact that Douglas H. McCormick had received medical assistance payments with anyone prior to the settlement of this claim. We received all of the medical bills regarding Douglas H. McCormick injuries through attorney Wiley Bowen. The bills do not indicate Douglas H. McCormick had received medical assistance payments. Mr. Bowen did not indicate that Douglas H. McCormick had received medical assistance payments.

Farm Bureau's forecast of evidence clearly shows that it was without notice, actual or constructive, of plaintiff's payments on behalf of McCormick. Plaintiff made no response to Farm Bureau's forecast of evidence, but relied solely on the allegations in its complaint. Under such circumstances, Farm Bureau was entitled to summary judgment. *See Lowe v. Bradford,* 305 N.C. 366, 289 S.E. 2d 363 (1982).

Affirmed.

Chief Judge VAUGHN and Judge JOHNSON concur.