ALAIMO FAMILY CHIROPRACTIC, PLAINTIFF v. ALLSTATE INSURANCE COMPANY, DEFENDANT

No. COA02-300

(Filed 31 December 2002)

**Assignments— personal injury—proceeds of claim—medical services**

The trial court did not err by granting summary judgment in favor of plaintiff who provided medical services to a patient who was injured in an automobile with a driver insured by defendant

insurance company when the patient executed an assignment in favor of plaintiff and defendant failed to heed the assignment and did not pay plaintiff out of the insurance proceeds, because: (1) the first sentence of the assignment directs any insurance carriers that may be obligated for the patient's bills to pay directly and exclusively in the name of plaintiff; (2) there is no evidence that defendant was misled or confused by the document, and defendant implicitly acknowledged the existence and validity of the assignment; (3) the patient did not assign to plaintiff his personal injury claim against defendant, but assigned the proceeds of that claim; and (4) N.C.G.S. §§ 44-49 and 44-50 which deal with liens recovered as damages in personal injury actions do not apply in this case.

Appeal by defendant from judgment entered 29 November 2001 by Judge James H. Faison, III in New Hanover County District Court. Heard in the Court of Appeals 30 October 2002.

*Jennifer L. Umbaugh, for plaintiff-appellee.*

*Walker, Clark, Allen, Grice & Ammons, L.L.P., by Jerry A. Allen and Gay P. Stanley, for defendant-appellant.*

HUDSON, Judge.

Alaimo Family Chiropractic ("Alaimo") provided medical services to a patient who was injured in an automobile crash with a driver insured by Allstate Insurance Company ("Allstate"). The patient executed an "Assignment of Proceeds, Lien and Authorization" ("assignment") in favor of Alaimo. When Allstate failed to heed the assignment and did not pay Alaimo for the treatment that Alaimo had provided, Alaimo sued. The district court granted Alaimo's motion for summary judgment, and Allstate now appeals. For the reasons set forth below, we affirm the decision of the district court.

I.

On March 14, 2000, Paul Tucker, insured by Allstate, was involved in an automobile collision with John MacEwan. Mr. MacEwan was injured in the wreck and sought treatment with Alaimo, who provided chiropractic care to Mr. MacEwan from March 20, 2000, to June 29, 2000. On March 20, 2000, Mr. MacEwan signed the assignment. Alaimo forwarded a copy of the document to Allstate's claims representative, Leigh Ann Ritter, on March 22, 2000, and again on April 19, 2000.

ALAIMO FAMILY CHIROPRACTIC v. ALLSTATE INS. CO.

[155 N.C. App. 194 (2002)]

In addition to a copy of the assignment, Alaimo sent Allstate a bill for services rendered to Mr. MacEwan up to and including March 22, 2000, which amounted to $400. Ms. Ritter advised Alaimo that she would pay the $400 bill but that Allstate would not be willing to pay Alaimo for Mr. MacEwan's treatment beyond the initial two or three visits.

In May 2000, Alaimo informed Allstate that Mr. MacEwan's injuries were consistent with the type that result from automobile collisions and that Mr. MacEwan would require 20 to 24 treatments at an estimated cost of $1500 to $1800. The next month Ms. Ritter sent a letter to Mr. MacEwan, offering him $1500 to settle his claim, with $1100 going to Mr. MacEwan and $400 to Alaimo. Allstate did not send a copy of this letter to Alaimo.

Because it had heard nothing from Allstate, Alaimo sent a facsimile to Ms. Ritter on April 18, 2001, requesting information on the status of its claim. Ms. Ritter acknowledged that she had received the Assignment of Proceeds, Lien and Authorization but informed Alaimo that Allstate had settled with Mr. MacEwan directly and had sent the entire $1500 to him. On April 24, 2001, Alaimo notified Allstate that it had failed to honor the assignment and demanded full payment of its account. In a letter to Alaimo dated April 25, 2001, Ms. Ritter indicated that she had previously told Mr. MacEwan and Alaimo that Allstate would not pay for treatment beyond the two or three initial visits; that Alaimo and Mr. MacEwan chose to continue treatment knowing that Allstate would not cover it; that she had erred in sending $400 of the $1500 settlement to Mr. MacEwan rather than to Alaimo; and that Allstate was willing to pay Alaimo $400 if Alaimo would agree to collect the remaining balance directly from Mr. MacEwan.

Alaimo sued in the district court small claims division in May 2001. The magistrate entered judgment in favor of Alaimo, and Allstate appealed to the district court. Both parties filed motions for summary judgment. On November 29, 2001, the district court granted Alaimo's motion and denied Allstate's motion. Specifically, the court found that the assignment was valid and "obligated the Defendant to acknowledge the rights of the Plaintiff to receive payment out of the insurance proceeds for the medical treatment the Plaintiff provided." Allstate now appeals.

II.

Allstate argues that the trial court erred in granting summary judgment to Alaimo because the assignment did not create a valid

assignment under North Carolina law. Accordingly, Allstate contends that it, and not Alaimo, is entitled to judgment as a matter of law.

An assignment is a formal transfer of property or property rights from one person (the assignor) to another (the assignee). *Hinshaw v. Wright*, 105 N.C. App. 158, 164, 412 S.E.2d 138, 143 (1992). Principles of general contract law determine whether an assignment is valid. *Martin v. Ray Lackey Enterp., Inc.*, 100 N.C. App. 349, 354, 396 S.E.2d 327, 330 (1990). When the parties use clear and unambiguous terms, the contract should be given its plain meaning, and the court can determine the parties' intent as a matter of law. *Id.*

Here, the assignment provided, in pertinent part, as follows:

I hereby authorize and direct any and all insurance carriers, attorneys, agencies, governmental departments, Companies, individuals, and/or other legal ("payers"), which may elect or be obligated to pay, provide, or distribute benefits to me for any medical conditions, accidents, injuries, or illnesses, past, present, or future ("condition") to pay directly and exclusively in the name of Alaimo Chiropractic such sums as may be owing to Alaimo Chiropractic for charges incurred by me at the office relating to my condition, with such payment to be made exclusively in the name of Alaimo Chiropractic. I further grant a lien to Alaimo Chiropractic with respect to my charges. This lien shall apply to all payers and to full extent permitted by law. For the purposes of this document (herein, "Assignment and Lien"), "benefits" shall include, but not be limited to, proceeds from any settlement, judgment or verdict, as well as, any proceeds relating to commercial health or group insurance, attorney retainer agreements, medical payments benefits, personal injury protection, no-fault coverage, uninsured and underinsured motorist coverage, third party liability distributions, disability benefits, and any other benefits or proceeds payable for me for the purposes stated herein.

The parties dispute whether the assignment is unambiguous and, correspondingly, whether it can be given its plain meaning.

In *Charlotte-Mecklenberg Hospital Authority v. First of Georgia Insurance Co.*, our Supreme Court upheld an assignment that provided:

[T]he undersigned hereby assigns to the Hospital Authority and each of its facilities that provides services to the patient all right, title and interest in and to any compensation or payment in any

form that the undersigned received or shall receive as a result of or arising out of the injuries sustained by the patient. . . ."

. . .

[T]he undersigned hereby authorizes and directs any person or corporation having notice of this assignment to pay to the Hospital Authority directly the amount of the indebtedness owed to the Hospital Authority in connection with services rendered to the patient.

340 N.C. 88, 91-92, 455 S.E.2d 655, 657, *reh'g denied*, 340 N.C. 364, 458 S.E.2d 186 (1995). These provisions, the Court explained, "should alleviate any doubt that the assignment required the defendants to pay the assigned money to the plaintiff." *Id.* at 92, 455 S.E.2d at 657. Thus, the liability carrier was required to pay the disputed amount to the assignee. *Id.*, 455 S.E.2d at 658.

Based on a careful reading of the document at issue, we conclude that in clear and unambiguous terms the language grants Alaimo an assignment of the insurance proceeds. The first sentence directs any insurance carriers that may be obligated for Mr. MacEwan's bills "to pay directly and exclusively in the name of Alaimo Chiropractic." We fail to see how this language is ambiguous. We see no meaningful distinction between this text and that in the assignment the Supreme Court upheld in *Charlotte Mecklenberg*, as the text here clearly assigns the benefits from Mr. MacEwan's personal injury claim to Alaimo.

Moreover, there is no evidence that Allstate was misled or confused by the document. In fact, Allstate implicitly acknowledged the existence and validity of the assignment when Ms. Ritter indicated to Alaimo that she had erroneously sent $400 to Mr. MacEwan rather than to Alaimo. As she indicated in her letter to Alaimo, "I did err in sending the full settlement to Mr. MacEwan rather than sending $400 to you. At this time I am willing to pay you that $400, with the understanding that you will pursue Mr. MacEwan for any remaining balance owed." Allstate's recognition of the assignment further persuades us that the assignment is unambiguous and that we can give it its plain meaning.

Allstate also argues that the assignment is invalid because, rather than assigning to Alaimo the proceeds of the claim, it assigns the claim itself. In North Carolina, a patient cannot assign his claim to

another, but he can assign the proceeds of that claim. *Charlotte Mecklenburg*, 340 N.C. at 91, 455 S.E.2d at 657. As that Court explained:

> There is a distinction between the assignment of a claim for personal injury and the assignment of the proceeds of such a claim. The assignment of a claim gives the assignee control of the claim and promotes champerty. Such a contract is against public policy and void. The assignment of the proceeds of a claim does not give the assignee control of the case and there is no reason it should not be valid.

*Id.* (internal citations omitted).

Here, however, Mr. MacEwan did not assign to Alaimo his personal injury claim against Allstate. To the contrary, he assigned the proceeds of that claim, which, as we indicated above, is permitted. Pursuant to the assignment, Alaimo is entitled to receive "proceeds from any settlement, judgment, or verdict, as well as any proceeds relating to commercial health or group insurance, attorney retainer agreements, medical payments benefits, personal injury protection, no-fault coverage, uninsured and underinsured motorist coverage, third party liability distributions, disability benefits, and any other benefits or proceeds payable to me for the purposes stated herein" (emphasis added). This language clearly assigns to Alaimo the proceeds from Mr. MacEwan's claim against Allstate. We see no evidence that Alaimo also has received the right to litigate or otherwise control Mr. MacEwan's claim in general.

Finally, Allstate argues that the assignment is not valid and enforceable under N.C. Gen. Stat. §§ 44-49 and 44-50. In our view, those provisions, which deal with liens recovered as damages in personal injury actions, do not apply here. The dispute is over the validity of the assignment of the proceeds of Mr. MacEwan's claim. The language in the assignment providing for a lien is not at issue here.

For the reasons set forth above, we affirm the decision of the district court.

Affirmed.

Judges McGEE and THOMAS concur.