DR. JOHN A. SMITH, D/B/A HIGHWOOD CHIROPRACTIC, PLAINTIFF v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DEFENDANT

No. COA02-544

(Filed 20 May 2003)

**1. Liens— medical services—settlement proceed monies**

The trial court erred by denying plaintiff chiropractor's motions for summary judgment, directed verdict, and judgment notwithstanding the verdict in an action against defendant insurance company for its failure to retain sufficient funds from settlement proceeds received by a pro se injured party to satisfy plaintiff's lien for medical services provided under N.C.G.S. §§ 44-49 and 44-50, because: (1) an insurer's actual notice of the medical expenses incurred by an injured party creates a lien against future settlement proceeds even when notice is provided to the insurer by the pro se injured party rather than by the medical provider or the injured party's attorney; and (2) the injured party's submission to the insurer of a health insurance claim form was sufficient under the facts of this case to place the insurer on notice of the medical provider's lien against settlement proceeds.

SMITH v. STATE FARM MUT. AUTO. INS. CO.

[157 N.C. App. 596 (2003)]

**2. Costs— attorney fees—lien on settlement proceeds for medical services**

The trial court did not err by denying plaintiff chiropractor's motion for attorney fees under N.C.G.S. § 6-21.1, because: (1) plaintiff did not bring his suit under a policy issued by defendant insurance company, but instead alleged that defendant breached its duty to plaintiff under N.C.G.S. §§ 44-49 and 44-50 by failing to retain sufficient funds from the settlement proceeds to satisfy plaintiff's lien for medical services; and (2) N.C.G.S. § 6-21.1 was inapplicable since plaintiff was not the beneficiary of the insurance policy relevant to this lawsuit.

Judge LEVINSON concurring in part and dissenting in part.

Appeal by plaintiff from orders entered 1 August 2001 and 30 January 2002 by Judge James R. Fullwood in Wake County District Court. Appeal by defendant from orders entered 2 November 2000 and 12 February 2001, and from judgment entered 15 February 2001 by Judge James R. Fullwood in Wake County District Court. Heard in the Court of Appeals 29 January 2003.

*E. Gregory Stott for plaintiff appellee-appellant.*

*Haywood, Denny & Miller, L.L.P., by John R. Kincaid, for defendant appellee-appellant.*

TIMMONS-GOODSON, Judge.

Dr. John A. Smith ("plaintiff") appeals from orders of the trial court denying his motion for attorneys' fees in his action against State Farm Mutual Automobile Insurance Company ("defendant"). Defendant appeals from orders of the trial court denying its motions for summary judgment and for directed verdict, as well as from the judgment entered against it. For the reasons set forth herein, we affirm in part and reverse in part the judgment and orders of the trial court.

The relevant facts of the instant appeal are as follows: On 20 November 1998, plaintiff filed a complaint against defendant in Wake County District Court alleging that defendant had failed to retain out of certain settlement proceeds monies allegedly owed to plaintiff under a valid lien. On 1 November 2000, the trial court denied motions by plaintiff and defendant for summary judgment.

The case came for hearing before a jury on 12 February 2001, at which time the evidence presented tended to show the following: In 1996, plaintiff rendered health care services totaling $1,991.00 to Johnny Wayne Wynne ("Wynne"), who sought treatment with plaintiff for injuries suffered in an automobile accident. Wynne thereafter retained counsel to bring suit against Theobald Materu, an insured of defendant, to recover damages associated with the accident. Accordingly, plaintiff submitted a health insurance claim form ("the HCFA form") to Wynne's counsel, setting out the amount that Wynne owed plaintiff for services rendered in connection with the accident, as well as an irrevocable assignment of benefits to plaintiff executed by Wynne on 10 June 1996. Wynne, however, subsequently discharged his attorney and, acting *pro se*, settled the case directly with defendant. Prior to settling the case, Wynne provided defendant with the HCFA form and a copy of plaintiff's bill for services. After defendant settled the case with Wynne, it disbursed all of the proceeds of the settlement directly to Wynne. Wynne failed to pay plaintiff out of the settlement funds, and in November of 1998, plaintiff obtained judgment against Wynne for $1,991.00, the amount Wynne owed plaintiff for medical services rendered in connection with the accident.

Upon consideration of the evidence, the jury found that submission to defendant of the HCFA form by Wynne put defendant on notice of the lien asserted by plaintiff. The trial court accordingly entered judgment for plaintiff in the amount of $1,991.00, plus interest. Defendant now appeals from the trial court's denial of its motion for summary judgment, the denial of its motion for directed verdict, and from the judgment rendered in the case.

On 1 August 2001, the trial court denied plaintiff's motion for award of attorneys' fees. The trial court further denied, by order entered 30 January 2002, a motion by plaintiff pursuant to Rule 52 of the North Carolina Rules of Civil Procedure requesting the trial court to make findings of fact and conclusions of law in support of its 1 August 2001 order denying plaintiff's motion for attorneys' fees, as well as plaintiff's motion, pursuant to Rules 59 and 60, to set aside the 1 August 2001 order. Plaintiff now appeals from the denial of his motions.

---

The primary issue presented by defendant on appeal is whether an insurer's actual notice of the medical expenses incurred by an injured party creates a lien against future settlement proceeds, where such notice is provided to the insurer by the *pro se* injured party

rather than by the medical provider or the injured party's attorney. For the reasons stated herein, we conclude that the injured party's submission to the insurer of a health insurance claim form was sufficient, under the facts of this case, to place the insurer on notice of the medical provider's lien against settlement proceeds, thus triggering the insurer's obligations under section 44-50 of the North Carolina General Statutes.

The primary issue presented by plaintiff on appeal is whether he was entitled to an award of attorneys' fees under section 6-21.1 of the General Statutes. We conclude that section 6-21.1 is inapplicable to the present case and affirm the orders of the trial court denying plaintiff attorneys' fees. We now address defendant's and plaintiff's appeals in turn.

## I. Defendant's Appeal

[1] Defendant asserts that the trial court erred in denying its motions for summary judgment and for a directed verdict, and in entering judgment against it. Defendant first argues that the trial court erred by submitting the issue of the existence of a lien to the jury as a question of fact. Defendant contends that the facts were undisputed and that the issue presented was a question of law. We agree.

The parties do not contest the authenticity of the documents submitted in the record. Nor do they contest the following salient facts: Wynne suffered injuries in a motor vehicle accident, for which he sought treatment with plaintiff; Wynne incurred a medical bill of $1,991.00 for this treatment; Wynne sued the other driver, who was represented by defendant-insurer; Wynne discharged his counsel and settled the case *pro se* with defendant; Wynne submitted an HCFA health insurance claim form to defendant before the settlement; defendant disbursed the settlement funds directly to Wynne.

The parties disagree only as to whether Wynne's submission of the HCFA form to defendant triggered defendant's statutory duty to retain sufficient funds from the settlement monies to pay plaintiff for medical services provided to Wynne. Because resolution of this issue presents only questions of law, the case is appropriate for entry of summary judgment, provided the undisputed facts establish that one of the parties is entitled to judgment. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001); *N.C. Baptist Hosps., Inc. v. Crowson*, 155 N.C. App. 746, 573 S.E.2d 922, 923 (2003) (determining that there were no genuine issues of material fact presented by the parties' dispute over proper interpretation of sections 44-49 and 44-50 of the North

Carolina General Statutes); *Alaimo Family Chiropractic v. Allstate Ins. Co.*, 155 N.C. App. 194, 574 S.E.2d 496, 499 (2002) (concluding that summary judgment was appropriate to resolve an issue of validity of assignment of benefits for payment to a chiropractor for medical services rendered in connection with an automobile accident), *disc. review denied*, 356 N.C. 667, —— S.E.2d —— (2003). We conclude that the trial court erred by submitting this case to a jury.

Because the trial court erred in submitting this case to the jury, the judgment entered in favor of plaintiff upon the jury verdict must be reversed. We next consider whether, on the facts presented by the instant case, "any party [was] entitled to a judgment as a matter of law" at the summary judgment stage. N.C. Gen. Stat. § 1A-1, Rule 56(c). We note that, although defendant appealed from the order of the trial court denying summary judgment, plaintiff appealed only from the orders of the trial court denying attorneys' fees. We nevertheless elect to treat plaintiff's appeal as a petition for certiorari and review the trial court's order denying plaintiff's motion for summary judgment pursuant to our supervisory authority under section 7A-32(c) of the North Carolina General Statutes and North Carolina Appellate Rule 21. *See* N.C. Gen. Stat. § 7A-32(c) (2001); N.C.R. App. P. 21 (2002). We therefore consider whether the trial court properly denied summary judgment to plaintiff and defendant.

Defendant argues that the trial court erred in denying summary judgment because the HCFA form was insufficient notice to create a medical lien, and defendant therefore had no duty to retain settlement funds. Plaintiff asserts that the claim form was adequate to notify defendant of the medical debt incurred for Wynne's treatment. We turn to the governing statutes for resolution of this issue. Sections 44-49 and 44-50 of the North Carolina General Statutes provide for the creation of medical provider liens upon recoveries for personal injuries. Section 44-49 provides, in pertinent part, as follows:

> (a) From and after March 26, 1935, there is hereby created a lien upon any sums recovered as damages for personal injury in any civil action in this State. This lien is in favor of any person, corporation, State entity, municipal corporation or county to whom the person so recovering, or the person in whose behalf the recovery has been made, may be indebted for any drugs, medical supplies, ambulance services, services rendered by any physician . . . or services rendered in connection with the injury in compensation for which the damages have been recovered. . . .

(b) Notwithstanding subsection (a) of this section, no lien provided for under subsection (a) of this section is valid with respect to any claims whatsoever unless the physician, dentist, nurse, hospital, corporation, or other person entitled to the lien furnishes . . . upon request to the attorney representing the person in whose behalf the claim for personal injury is made, an itemized statement, hospital record, or medical report for the use of the attorney in the negotiation, settlement, or trial of the claim arising by reason of the personal injury, and a written notice to the attorney of the lien claimed.

N.C. Gen. Stat. § 44-49 (2001). Section 44-49 applies only to recoveries in a contested lawsuit, *see Johnston County v. McCormick*, 65 N.C. App. 63, 65 n.1, 308 S.E.2d 872, 873 n.1 (1983), and should be read in conjunction with section 44-50. *See Charlotte-Mecklenburg Hospital Auth. v. First of Ga. Ins. Co.*, 340 N.C. 88, 90, 455 S.E.2d 655, 657 (1995). Section 44-50 provides for the creation of a lien against settlement proceeds in relevant part as follows:

A lien as provided under G.S. 44-49 shall also attach upon all funds paid to any person in compensation for or settlement of the injuries, whether in litigation or otherwise. If an attorney represents the injured person, the lien is perfected as provided under G.S. 44-49. Before their disbursement, any person that receives those funds shall retain out of any recovery or any compensation so received a sufficient amount to pay the just and bona fide claims for any . . . services rendered by any physician . . . after having received notice of those claims.

N.C. Gen. Stat. § 44-50 (2001).

In the instant case, although plaintiff forwarded the relevant information to Wynne's attorney pursuant to section 44-49(b), because Wynne thereafter settled his claim *pro se*, the attorney did not communicate with defendant or participate in the disbursement of funds. Although section 44-50 contemplates situations in which the injured person is not represented by counsel, *see id.* (providing that, "[i]f an attorney represents the injured person, the lien is perfected as provided under G.S. 44-49"), neither section 44-49 nor section 44-50 sets forth procedures or formalities required for "perfection" of the lien by a *pro se* injured party. Section 44-50 simply states that a lien "as provided under G.S. 44-49 *shall also attach*" upon settlement proceeds for medical bills for "services rendered by any physician[,]" provided the insurer has "received notice of those claims." *Id.*

(emphasis added). Section 44-49, referenced in section 44-50, states that a lien "is hereby created" on relevant medical debts.[1] The question therefore becomes whether or not a valid lien may arise under sections 44-49 and 44-50 where the injured party is not represented by counsel.

"The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 574, 573 S.E.2d 118, 121 (2002). "[C]onstruction of a statute which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without doing violence to the legislative language." *N.C. Baptist Hospitals, Inc. v. Mitchell*, 323 N.C. 528, 532-33, 374 S.E.2d 844, 846-47 (1988) (adopting the "interpretation of N.C.G.S. § 44-50 [which] increases the likelihood that such health care providers will receive . . . compensation as a result of their patient having prevailed in an action for the personal injury for which the care was provided"). An examination of sections 44-49 and 44-50 satisfies us that "[t]he obvious intent of the hospital lien statute is to protect hospitals that provide medical services to an injured person who may not be able to pay but who may later receive compensation for such injuries which includes the cost of the medical services provided." *Rose Medical v. State Farm*, 903 P.2d 15, 16 (Colo. App. 1994) (discussing similar Colorado statute). Moreover, this Court is not authorized to read into the statute additional restrictions and procedures not found therein. "[I]t is within the province of the legislature, and not this Court, to place any new or additional restrictions on the distribution of funds to medical service provider lien holders not mandated by sections 44-49 and 44-50." *N.C. Baptist Hosps., Inc.*, 155 N.C. App. at 750, 573 S.E.2d at 924; *see also Liberty Mut. Ins. Co.*, 356 N.C. at 575, 573 S.E.2d at 121 (concluding that, because the "statute does not prescribe the type of notice, the content of the notice, or the method by which it is to be executed" and lacked "any particulars as to the time within which notice to the insurer must be provided," the statute of limitations was not applicable to the notice requirement at issue).

Upon consideration of both the language and purpose of the statutes, we conclude that under sections 44-49 and 44-50, a lien

---

1. We note that section 44-49 was amended effective 1 October 2001, to remove the restriction previously in the statute that "no lien . . . shall be valid with respect to any claims whatsoever unless the person or corporation entitled to the lien therein provided for shall file a claim with the clerk of the court in which said civil action is instituted within 30 days after the institution of such action[.]" 2001 N.C. Sess. Laws ch. 377, § 1.

**SMITH v. STATE FARM MUT. AUTO. INS. CO.**

[157 N.C. App. 596 (2003)]

against the settlement proceeds received by a *pro se* injured party arises by operation of law, and is perfected when the insurer has "received notice" of the "just and bona fide claims" of the medical service provider. We must therefore determine, under the facts of the instant case, whether defendant "received notice" of plaintiff's "just and bona fide" claim for medical services.

The HCFA insurance claim form provided to defendant by Wynne recites the medical procedures employed, the date treatment was provided, the amount owed, and the name, address, and phone number of the injured party and the medical provider. Both Wynne and plaintiff signed the form. We conclude that the HCFA form was sufficient to place defendant on notice of the existence of the debt Wynne owed plaintiff for medical services incurred for treatment of his accident-related injuries, and that Wynne's submission to defendant of this form created a lien against his settlement proceeds in the amount of the stated debt.

The parties present arguments regarding the significance of the following language located directly above the injured party's signature: "I authorize payment of medical benefits to the undersigned physician . . . for services described below." Plaintiff and defendant disagree as to whether this language assigning the right to payment of medical benefits is sufficient to assign the right to recovery of settlement proceeds. We conclude that the language and Wynne's signature thereto acknowledge the fact that the medical debt at issue is a "just and bona fide claim[]" as stated in section 44-50. The legitimacy of the claim form is underscored by the fact that Wynne submitted the form to defendant. Although it might have been preferable for the form to include an express assignment of the right to recovery of settlement proceeds, under the facts of this case, the absence of such language does not defeat plaintiff's right to recovery, as the lien was created by operation of law upon notice to the insurer of the medical claim. We further reject defendant's argument that no lien is created against the settlement proceeds unless the insurer is informed as to "whether the bill is outstanding or has been paid by the patient or the patient's health insurance company." An insurer does not have an affirmative duty to investigate the billing arrangements underlying a facially valid medical bill. The lien on settlement proceeds arose by the injured party's submission of the claim form to defendant. Indeed, defendant acknowledges that "State Farm would have been under a duty to honor and protect the lien if *the Plaintiff* had sent a *valid notice* of the lien to State Farm."

Sections 44-49 and 44-50 do not provide for a different result depending on who provides the insurer with notice of the medical bill, nor do they require any particular formalities for "valid notice" of the lien. In short, defendant was required to honor the lien and was entitled to rely upon it absent any information modifying the amount owed; further redistribution of the settlement proceeds would be between plaintiff and the injured party.

We conclude that, under the facts of this case, the submission of the health insurance claim form to defendant was sufficient to validate the medical service provider lien asserted by plaintiff.

We now turn to plaintiff's appeal.

## II. Plaintiff's Appeal

[2] Plaintiff argues that the trial court erred by denying his motion for attorneys' fees. Plaintiff asserts that the provisions of section 6-21.1 of the North Carolina General Statutes are applicable to the instant case, and that the trial court erred in concluding otherwise. Section 6-21.1 of the General Statutes provides in pertinent part as follows:

> In any personal injury or property damage suit, or suit against an insurance company under a policy issued by the defendant insurance company and in which the insured or beneficiary is the plaintiff, . . . the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the litigant obtaining a judgment for damages in said suit . . . .

N.C. Gen. Stat. § 6-21.1 (2001). Plaintiff contends that his suit comes within the ambit of the statute as a "suit against an insurance company under a policy issued by the defendant insurance company and in which the insured or beneficiary is the plaintiff." We disagree.

"The words of a statute must be construed in accordance with their ordinary and common meaning *unless* they have acquired a technical meaning or unless a definite meaning is apparent or indicated by the context of the words." *Raleigh Place Assoc. v. City of Raleigh*, 95 N.C. App. 217, 219, 382 S.E.2d 441, 442 (1989) (emphasis added); *see also Dare County Bd. of Educ. v. Sakaria*, 127 N.C. App. 585, 588, 492 S.E.2d 369, 371-72 (1997) (stating that, "when technical terms or terms of art are used in a statute, they are presumed to be used with their technical meaning in mind, likewise absent legislative intent to the contrary.").

SMITH v. STATE FARM MUT. AUTO. INS. CO.

[157 N.C. App. 596 (2003)]

Here, plaintiff did not bring his suit "under a policy issued by the defendant insurance company." Rather, plaintiff alleged that defendant breached its duty to plaintiff under sections 44-49 and 44-50 of the North Carolina General Statutes by failing to retain sufficient funds from the settlement proceeds to satisfy plaintiff's lien. Further, plaintiff is not the "beneficiary" of the insurance policy relevant to this lawsuit. Plaintiff urges this Court to apply to section 6-21.1's term "beneficiary" the generalized definition of "one who benefits from something." The term "beneficiary," however, appears here in the context of the phrase "under a policy issued by the defendant insurance company and in which the insured or beneficiary is the plaintiff[.]" In the technical context of section 6.21.1, a more appropriate definition of beneficiary is "[a] person who is designated to benefit from an appointment, disposition, or assignment (as in a will, insurance policy, etc.) [or] one designated to receive something as a result of a legal arrangement or instrument." *Black's Law Dictionary* 149 (7th ed. 1999). As plaintiff was not a beneficiary of the policy issued by defendant, the trial court correctly determined that section 6-21.1 was inapplicable, and properly declined to award attorneys' fees pursuant to this section. We therefore overrule plaintiff's assignment of error.

For the reasons discussed above, we conclude that the trial court erred by denying plaintiff's motion for summary judgment and in submitting this case to the jury. The judgment of the trial court entered upon the jury verdict in favor of plaintiff must therefore be reversed. We affirm the orders of the trial court denying plaintiff's motion for attorneys' fees. We remand this case to the trial court for entry of an order vacating the judgment entered upon the jury verdict and for entry of an order granting summary judgment to plaintiff. Each party shall bear its own costs incurred in this Court.

Affirmed in part, reversed in part, and remanded with instructions.

Judges TYSON concurs.

Judge LEVINSON concurs in part and dissents in part.

LEVINSON, Judge concurring in part and dissenting in part.

Because I believe that defendant's receipt of the HCFA form was insufficient to give notice of a claim of a lien against settlement proceeds in the amount of the stated debt, I respectfully dissent.

I agree with the majority that: (1) the existence of a lien was a question of law for the trial court, and thus it was error to submit this case to the jury; (2) a valid lien against settlement proceeds may arise by operation of law under N.C.G.S. § § 44-49 and 44-50 (2001) when the injured party is not represented by counsel; (3) the operation of § § 44-49 and 44-50 may be triggered when notice of a claim is communicated to an insurance carrier by someone other than the *medical provider*; and (4) N.C.G.S. § 6.21.1 (2001) does not permit plaintiff's recovery of attorney fees. I disagree, however, with the majority's interpretation and application of G.S. § § 44-49 and 44-50 to the facts of the instant case. The majority essentially holds that the "notice of . . . claims" in G.S. § 44-50 means "notice of a bill or debt for medical services."[2] The majority reasons that the defendant-carrier's actual notice of plaintiff's services and bill was sufficient to satisfy the provisions of G.S. §§ 44-49 and 44-50. This position is untenable for several reasons.

First, the majority's holding ignores the General Assembly's apparent awareness that the personal injury settlement practice is often informal. Not only did the General Assembly obviate the necessity of filing a lien with the clerk of court, it also permitted physicians and others to perfect a lien by complying with G.S. § 44-49(b). These examples illustrate an intention to foster informal means of perfecting liens and settling disputes. However, the logical implication of the majority opinion, which does not account for this reality involving settlement procedures, may be that every bill or document shared by a *pro se* claimant during litigation would give rise to notice of a claim for purposes of a lien.

Second, in holding that receipt of this HCFA form constitutes "notice" under G.S. § 44-50, the majority adopts *less* stringent requirements on medical providers to assert a lien under G.S. § 44-50 when the injured party is unrepresented by counsel than when he has counsel. G.S. § 44-49(b) requires, *inter alia*, that physicians provide a "written notice to the attorney of the lien claimed," in addition to providing "an itemized statement[.]" (emphasis added). Thus, the General Assembly has, through G.S. § 44-49(b), enabled medical providers to share information with attorneys without *necessarily*

---

2. I disagree with the majority's assessment that the issue is "whether defendant 'received notice' of plaintiff's 'just and bona fide' claim for medical services." (emphasis added). Whether the insurance carrier receives notice of plaintiff's medical services is different from whether it receives notice of a medical provider's affirmative claim to settlement monies pursuant to § § 44-49 and 44-50.

giving rise to a claim of a lien. Reading G.S. §§ 44-49 and 44-50 *in pari materia,* I conclude that the General Assembly intended the same result with regards to the circumstances surrounding settlement practices when injured persons have no legal representation. Moreover, the "obvious intent" of these lien statutes, the compensation of medical providers for the services provided to injured persons, *Rose Medical v. State Farm,* 903 P.2d 15, 16 (1994 Colo. App), is not lost by requiring a medical provider, such as the plaintiff herein, to provide the insurance carrier with an assignment of rights or some other express documentation that he is asserting a claim under G.S. §§ 44-49 and 44-50.

Third, although neither G.S. § 44-49 nor § 44-50 defines what constitutes a "claim" for purposes of creating a lien against settlement proceeds, the term, "claim," is defined in Black's Law Dictionary as "2. The *assertion* of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional. . . ." BLACKS LAW DICTIONARY 240 (7th ed. 1999) (emphasis added). Thus, there is no reason to assume that a "claim" is established whenever there is evidence of a "bill" or "statement of services" or something similar. Merely because a medical provider creates and shares documents evidencing his services and charges does not, *ipso facto,* suggest he wishes to "assert" a claim of lien. For example, an unrepresented injured may pay the outstanding balances due to medical providers, yet request documentation to support an effort to secure a settlement from an insurance carrier. Applying the majority's logic, the carrier is required to withhold settlement monies since it came into possession of bills or other indicia of medical services. Another common factual situation is that of the medical provider who has "written off" as an uncollectible bad debt an injured's medical bills. If the doctor, who had no intention of asserting a claim against settlement proceeds, later receives a check from a carrier as a result of the carrier's duty under the majority's reasoning, he might then be required to amend tax returns or make some other unexpected financial adjustment.

Fourth, neither the purpose of the HCFA form, nor its express language, indicates that it gave defendant "notice" that plaintiff was asserting a "claim" against settlement proceeds or was otherwise asserting a lien pursuant to G.S. §§ 44-49 and 44-50. I agree that the HCFA form provides an insurance carrier with appropriate evidence of treatment and the associated costs, which presumably assisted the settlement between the unrepresented injured person and defendant here. Attorneys' general use of a variety of documents with insurance

carriers, to catalog their clients' bills for medical services, is not unlike the unrepresented party's use of the HCFA form here. The HCFA form is specifically designed to permit access by medical providers to benefits under, *e.g.*, Medicaid, Medicare, or Group Health. The plaintiff, who had no direct contact with defendant insurance carrier before the settlement proceeds were distributed, did not provide an assignment of the insured's rights to the carrier. Nor did the injured person's signature in box thirteen (13) of the HCFA form, which authorized the "payment of medical benefits," constitute such an assignment. Settlement proceeds from defendant-insurance carrier are not the same as "payment of medical benefits." In short, the use of the HCFA form did not automatically put the carrier on "notice" that the plaintiff necessarily wished to assert a lien under G.S. §§ 44-49 and 44-50 simply because the form documented plaintiff's treatment and associated costs.

Finally, there is little import to the fact that plaintiff complied with the terms of G.S. § 44-49(b) and perfected its lien with the attorney who formerly represented the injured person. Given the attorney's subsequent release, no settlement monies were disbursed to the attorney, and the lien with respect to the attorney was ineffective as to defendant-insurance carrier.

I would hold that when an insurance carrier settles directly with an unrepresented injured party, the carrier does not have valid "notice" of a "just and bona fide claim" pursuant to G.S. § 44-50 unless it receives documentation that (1) constitutes a valid assignment of rights signed by the injured; or (2) contains unambiguous language that the medical provider is asserting a lien under the provisions of G.S. §§ 44-49 and 44-50, or language asserting an interest in or claim to settlement proceeds.

I am unpersuaded that such a ruling would place an unreasonable burden on medical providers to determine whether a patient is represented by counsel. Medical providers routinely take steps to collect charges for their services. The provisions in G.S. §§ 44-49 and 44-50 afford plaintiff and other medical providers lien remedies irrespective of whether the patient has legal counsel. A holding consistent with this dissent would not negate these remedies.

Like the majority, I agree the judgment entered on the jury verdict must be vacated, and the order denying plaintiff attorney fees affirmed. Unlike the majority, however, I would reverse and remand

with instructions for the trial court to enter summary judgment in
favor of defendant.

