DIETZ, Judge.
*268 This appeal is the culmination of a long-running dispute over $5,000. Plaintiff Christopher A. Faucette is a dentist who owns a commercial condominium. Defendant 6303 Carmel Road, LLC owns several adjacent condominium units. Defendant Bradley Winer is the member-manager of the Defendant LLC and also the president of the 6303 Carmel Road Condominium Association.
In December of 2010, a pipe burst above one of Defendants' units that shares a common interior wall with Faucette's unit. The resulting flood caused extensive damage to both units. Faucette recovered from his own insurance policy, but had to pay a $5,000 deductible. Defendants *269 made a claim on the condominium association's insurance policy and received a large settlement that included $5,000 to reimburse Faucette for his deductible.
Instead of releasing those funds to Faucette, Defendants kept the money for leverage in an ongoing dispute with Faucette over payment of condominium association dues. What followed was a series of demand letters, threats of lawsuits, and ultimately a bench trial for conversion and unfair and deceptive trade practices. The trial court entered judgment in favor of Faucette for $5,000, trebled the award to $15,000, and awarded $27,000 in attorneys' fees.
On appeal, Defendants argue that one superior court judge improperly overruled another *320 in the interpretation of a summary judgment order, that the trial court improperly excluded evidence at the bench trial, and that Faucette failed to prove his unfair and deceptive trade practices claim or show his entitlement to attorneys' fees.
For the reasons discussed below, we reject Defendants' arguments. The trial court's interpretation of the summary judgment order was permissible, any error in the exclusion of the challenged evidence was harmless, and the trial court's findings and conclusions on the Chapter 75 claim and corresponding attorneys' fees award are supported by competent evidence. Accordingly, we affirm the judgment of the trial court.
Facts and Procedural Background
Plaintiff Christopher A. Faucette owns Unit 102 in a commercial condominium building located at 6303 Carmel Road in Charlotte, North Carolina, where he has operated a dental practice for nearly twenty years. Defendant 6303 Carmel Road, LLC, owns four condominium units in the same building, including Unit 103, which is adjacent to and shares an interior wall with Faucette's unit. Defendant Bradley Winer is a member-manager of Defendant LLC.
Defendant Winer is also the president of 6303 Carmel Road Condominium Association, Inc., the entity that manages the condominium complex. The North Carolina Secretary of State administratively dissolved the condominium association on 30 October 2006 for failure to pay taxes, and it remained dissolved at the time of trial. Defendant Winer is the sole signatory on the condominium association's bank account, and the statements for that account are mailed to Winer's personal residence. The condominium association was never a party to this litigation.
On 15 December 2010, a pipe burst above Defendants' Unit 103, causing a flood that damaged both Unit 103 and Faucette's Unit 102. Faucette *270 maintains an insurance policy on his unit through State Farm, and he submitted a claim on this policy for extensive damage resulting from the flood. State Farm reimbursed Faucette for the cost of repairs, issuing a check for the amount owed reduced by Faucette's $5,000 deductible.
After the flood, Defendants similarly submitted a claim to the condominium association's insurance company, which issued a $21,000 settlement check to Defendants in late January 2011. The check included $5,000 to reimburse Faucette for his deductible. Defendants refused to turn this money over to Faucette, however, despite Faucette's written demand that Defendants do so. Instead, citing an ongoing dispute with Faucette over payment of condominium association dues, Defendants held the funds, placed them in the condominium association's bank account, and later gave them to Defendants' attorney to deposit in the law firm's trust account.
On 31 January 2011, Faucette, through counsel, wrote Defendant Winer a letter demanding payment of $10,626. State Farm also sent Winer a letter notifying Defendants of its subrogation rights and demanding payment of the $5,000 owed to its insured. Defendant Winer issued a written response to these letters, through his attorney, on 15 March 2011, offering to settle the dispute. In the settlement offer, Winer proposed to direct the condominium association to pay Faucette $5,165 in exchange for a release of all potential claims against Defendant Winer and the condominium association. Faucette did not accept the terms of this offer.
Defendant Winer testified at deposition that Defendants refused to return Faucette's $5,000 deductible in part because of an ongoing disagreement with Faucette over unpaid condominium association dues. Defendant Winter testified that he understood the money belonged to Faucette but refused to return it:
Q. All right. And you did that intentionally because you were basically pissed off at Dr. Faucette?
A. Yes.
Q. But you understand that's his money?
A. Uh-huh. Yes.
Q. And he has asked for it back?
A. Yes.
Q. And you haven't given it to him?
A. No. That means no. Sorry.
*321 *271 Faucette and his wife filed a complaint against Defendants on 16 December 2011, and the parties attended a mediated settlement conference as required by court order. Mediation failed, and Plaintiffs later voluntarily dismissed the action, without prejudice, on 25 September 2012. Faucette, his wife, their minor children, and Faucette's dental practice subsequently commenced this lawsuit against Defendants on 7 December 2012, asserting claims for negligence, trespass, conversion, unfair and deceptive trade practices, piercing the corporate veil/alter ego, and punitive damages. All of the claims stemmed from the flood and Defendants' refusal to pay the $5,000 for Faucette's deductible.
In response to the September 2012 lawsuit, Defendants immediately contacted Faucette's attorney regarding a possible settlement, but no negotiations followed. On 15 January 2013, Defendants moved to dismiss the negligence and trespass claims asserted by all of the plaintiffs other than Faucette. Defendants also moved to dismiss the unfair and deceptive trade practices claim in its entirety. The trial court decided Defendants' motion by order entered 3 March 2013, accepting a stipulation that only Faucette and the dental practice were asserting the trespass claim and denying the remainder of Defendants' motion.
Defendants moved for partial summary judgment on 12 March 2013. The summary judgment motion asserted that Defendants were entitled to judgment on Plaintiffs' claims for unfair and deceptive trade practices, mold-related bodily injury, negligence, trespass, and punitive damages. The motion did not challenge, or even mention, Faucette's conversion claim.
Before the trial court ruled on Defendants' summary judgment motion, the parties again attempted mediation on 28 June 2013 but were unsuccessful. However, on 19 August 2013, Defendants directed their attorney to disburse $5,000 from the law firm's client trust account made payable to Faucette.
On 18 September 2013, Judge Richard Boner entered an order on Defendants' motion for partial summary judgment, stating in relevant part:
Defendants' Motion for Summary Judgment is GRANTED in its entirety as to all of Plaintiffs' Claims, which claims are hereby dismissed with prejudice, EXCEPT for the claims of Christopher A. Faucette against Bradley Winer for "conversion" and "unfair and deceptive trade practices" and any damages therefrom, which are not dismissed and as to such claims the Motion is DENIED.
*272 The case came on for a bench trial before Judge Eric Levinson on 27 September 2013. At the trial, Defendants offered into evidence the settlement letter, dated 15 March 2011, to challenge Faucette's assertion that Defendants unreasonably refused to fully resolve the matter. Faucette's counsel objected to admission of the settlement letter into evidence, and Judge Levinson sustained the objection under Rule 408 of the North Carolina Rules of Evidence.
The trial resumed for a second day on 18 October 2013. Defendants moved the court for leave to amend their answer to add counterclaims for unjust enrichment and violation of Chapter 75 based on Faucette's admissions at trial that he had refused to pay condominium association dues. The court orally denied this motion.
At the urging of the trial court, Defendants again attempted to settle the matter with Faucette on 20 October 2013. No negotiations followed, however, and the trial court concluded that Defendants had illegally converted Faucette's $5,000. The court further determined that Faucette's conversion claim fell within Chapter 75 and thus trebled Faucette's damages of $5,000 to $15,000, reduced by the $5,000 already paid by Defendants.
On 7 November 2013, at the invitation of the trial court, Faucette filed a motion for attorneys' fees, requesting $49,538.16. Counsel for Defendants filed an affidavit in opposition to this motion, arguing that Defendants had made several "good faith efforts" to resolve the claims over the course of the litigation. Faucette did not dispute the parties' history of settlement discussions, offers, demands, or mediations. Nevertheless, on 9 May 2014, the trial court entered a final judgment concluding that Defendants converted *322 Faucette's funds, the conversion violated Chapter 75's prohibition against unfair and deceptive trade practices, and Defendants unwarrantedly refused to fully resolve the matters raised in the lawsuit. In light of these conclusions, the court awarded $27,000 in attorneys' fees to Faucette's counsel pursuant to N.C. Gen.Stat. § 75-16.1 (2013).
Defendants timely appealed.
Analysis
I. Jurisdiction to Enter Final Judgment Against Defendant LLC
Defendants first argue that the trial court lacked jurisdiction to enter final judgment against Defendant LLC because, at summary judgment, the court granted partial summary judgment as to "all of Plaintiffs' claims ... EXCEPT for the claims of Christopher A. Faucette *273 against Bradley Winer for 'conversion' and 'unfair and deceptive trade practices.' " Defendants contend that, by the plain terms of the summary judgment order, all claims against Defendant LLC were dismissed. For the reasons set forth below, we disagree.
"Judgments must be interpreted like other written documents, not by focusing on isolated parts, but as a whole. The interpreting court must take into account the pleadings, issues, the facts of the case, and other relevant circumstances." Reavis v. Reavis, 82 N.C.App. 77, 80, 345 S.E.2d 460, 462 (1986) (citations omitted). If a judgment is susceptive to multiple interpretations when considered in light of all relevant circumstances, the court should adopt the interpretation that is in line with the law applicable to the case. See, e.g., Blevins v. Welch, 137 N.C.App. 98, 102, 527 S.E.2d 667, 670 (2000). "Generally, the interpretation of judgments presents a question of law that is fully reviewable on appeal." Id. at 101, 527 S.E.2d at 670. However, this Court will afford some degree of deference to the trial court's interpretation of an ambiguous judgment. See id. at 102, 527 S.E.2d at 671.
We hold that in entering final judgment against Defendants, the trial court properly interpreted the order as denying summary judgment on the conversion and Chapter 75 claims against both Defendant Winer and Defendant LLC. First, Defendant Winer and Defendant LLC presented the identical argument in support of summary judgment on the Chapter 75 claim-maintaining that their conduct did not affect commerce and was neither unfair nor deceptive. Defendants did not assert that there were grounds for dismissing the claim against the LLC but not against Winer, and no party discussed that possibility at the hearing. Thus, there was no basis for the trial court to dismiss the Chapter 75 claim against one but not both Defendants.
More importantly, Defendants did not even request summary judgment on Faucette's conversion claim. But the summary judgment order, as written, purports to dismiss that claim with respect to Defendant LLC. That the order appears to dismiss a claim that Defendants did not even ask to be dismissed is strong evidence that the order is ambiguous.
In sum, upon reviewing "the pleadings, issues, the facts of the case, and other relevant circumstances" surrounding the order, we conclude that the order is ambiguous and thus properly subject to interpretation by another superior court judge later in the proceeding. In light of this ambiguity and the potential injustice of finding meritorious claims inexplicably dismissed before trial, and according due deference to the trial court in the interpretation of its own orders, we affirm the trial *274 court's conclusion that its summary judgment order did not dismiss the conversion and Chapter 75 claims against Defendant LLC.[1]
II. Exclusion of Settlement Letter
Defendants next argue that the trial court erred in sustaining Faucette's objection to admission of the March 2011 settlement letter into evidence. At the bench trial, Defendants sought to introduce the letter (which their counsel sent to Faucette's counsel)
*323 offering to pay $5,165 in exchange for Faucette signing a settlement agreement releasing Defendants from any future claims. Defendants argued at trial that the settlement letter was admissible under Rule 408 because Faucette claimed Defendants unreasonably refused to pay him the $5,000 from the condominium association's insurance, and "this document squarely shows that as of March, 2011 we're not refusing to make a payment."
We need not determine whether the trial court correctly applied Rule 408 because any error in the admission of this settlement letter was harmless as a matter of law.
"Appellate courts do not set aside verdicts and judgments for technical or harmless error. It must appear that the error complained of was material and prejudicial, amounting to a denial of some substantial right." Walker v. Walker, 201 N.C. 183, 184, 159 S.E. 363, 364 (1931). The appellant thus bears the burden of showing not only that an error was committed below, but also that such error was prejudicial-meaning that there was a reasonable possibility that, but for the error, the outcome would have been different. Medford v. Davis, 62 N.C.App. 308, 311, 302 S.E.2d 838, 840 (1983) ; see also Burgess v. C.G. Tate Const. Co., 264 N.C. 82, 83, 140 S.E.2d 766, 767 (1965) ("The burden is on appellant to show not only that there was error in the trial but also that there is a reasonable probability that 'the result was materially affected thereby to his hurt.' ").
Defendants maintain that the trial court's exclusion of the settlement letter was not harmless because "the letter completely contradicted Faucette's contentions that [Defendants] failed to offer to return the funds and that there were unwarranted refusals by [Defendants] to fully resolve the matter." But this ignores the trial court's actual finding-that Defendants did not unconditionally offer to pay the disputed $5,000. The settlement letter, which offered to return the $5,000 only if Faucette *275 agreed to certain things in return, does not refute the trial court's findings that Defendants refused to unconditionally return the money until years after this dispute began.
Moreover, "[e]rror in the exclusion of evidence is harmless when other evidence of the same import is admitted." Medford, 62 N.C.App. at 311, 302 S.E.2d at 840. Here, Defendants submitted-and the trial court considered-numerous examples of Defendants' offers to settle. Faucette did not dispute the facts regarding the parties' history of settlement discussions, offers, demands, or mediations. Defendants even admit in their brief to this Court that "[e]ven assuming, arguendo, the [settlement] letter was properly excluded, the record is full of undisputed evidence of ongoing efforts of Winer to fully resolve Faucette's conversion claim."
Simply put, the trial court was aware that Defendants made numerous offers to settle in which they conditioned payment of the $5,000 on concessions, releases, or other commitments from Faucette. But there was no evidence that Defendants made an unconditional offer to return the $5,000 until this costly litigation had gone on for years. It was this failure to promptly offer the unconditional return of the money that supported the trial court's findings. Accordingly, any error in excluding the settlement letter was harmless. See Shepard v. Drucker & Falk, 63 N.C.App. 667, 672, 306 S.E.2d 199, 203 (1983).
III. Unfair and Deceptive Trade Practices
Defendants next argue that the trial court erred by concluding that Defendants committed unfair or deceptive trade practices in violation of Chapter 75 of our General Statutes. We review the trial court's findings of fact for competent evidence and the court's conclusions of law de novo. Carolina Power & Light Co. v. City of Asheville, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004).
"To prevail on a claim of unfair and deceptive trade practice a plaintiff must show (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." Spartan Leasing Inc. v. Pollard, 101 N.C.App. 450, 460-61, 400 S.E.2d 476, 482 (1991) ; see also *324 N.C. Gen.Stat. § 75-1.1 (2013). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) ; see also D.G. II, LLC v. Nix, 213 N.C.App. 220, 230, 713 S.E.2d 140, 148 (2011) ("[A]n act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." (internal *276 quotation marks omitted)). The statute does not apply to every transaction that might be viewed as unfair or deceptive, but applies only if the alleged violator is engaged in "commerce." See N.C. Gen.Stat. § 75-1.1. Our legislature has defined "commerce" very broadly, however, to include " all business activities, however denominated," with the exception of " professional services rendered by a member of a learned profession." Id. § 75-1.1(b) ; see also Prince v. Wright, 141 N.C.App. 262, 268, 541 S.E.2d 191, 197 (2000) ( "Commerce in its broadest sense comprehends intercourse for the purpose of trade in any form.").
Defendants argue that their improper conversion of the $5,000 was not "unfair and deceptive" and not "in or affecting commerce" within the meaning of the statute because it was simply a "private and personal dispute between Faucette and Winer, or intra-corporate dispute among and between members of the Condominium Association."
This Court previously has held that a defendant's mere act of tortious conversion can satisfy the elements of a Chapter 75 claim. See, e.g., Bartlett Milling Co. v. Walnut Grove Auction & Realty Co., 192 N.C.App. 74, 83, 665 S.E.2d 478, 487 (2008) ; Eley v. Mid/East Acceptance Corp. of N.C., 171 N.C.App. 368, 374-75, 614 S.E.2d 555, 560-61 (2005) ; Lake Mary Ltd. P'ship v. Johnston, 145 N.C.App. 525, 533-34, 551 S.E.2d 546, 552-53 (2001). Here, Defendants converted funds belonging to Faucette by refusing to turn over the $5,000 that Defendants owed Faucette from the insurance settlement. Defendants obtained those funds because of Defendant Winer's position as acting president and sole custodian of the condominium association's finances and Defendant LLC's ownership of the adjacent units damaged by the burst pipe. Defendants abused their positions of power to withhold payment of the money Faucette legally was owed, solely to pressure Faucette to resolve several unrelated disputes between the parties, including an ongoing dispute involving payment of condominium association dues. This wrongful conduct is unfair or deceptive within the meaning of the statute. See Lake Mary Ltd., 145 N.C.App. at 533-34, 551 S.E.2d at 552-53 (concluding that defendant's conversion constituted an unfair or deceptive act or practice when it was accomplished through "an inequitable assertion of [defendant's] power and position"); Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (noting that "where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice").
Defendants' acts also were in or affecting commerce. Defendant Winer testified that he knew that $5,000 from the condominium association's insurance settlement belonged to Faucette and that *277 Faucette had demanded return of the money. Faucette's insurer also notified Defendants of its subrogation rights, demanding that Defendants release the funds belonging to Faucette. Defendants nevertheless refused to surrender these funds unless Faucette agreed to certain conditions unrelated to that insurance payment, including the payment of outstanding condominium association dues. Withholding money owed from an insurance carrier's settlement payment in order to force the rightful recipient of those funds to resolve other, unrelated business disputes is conduct "in or affecting commerce" under Chapter 75. See Adams v. Jones, 114 N.C.App. 256, 259, 441 S.E.2d 699, 700 (1994). Accordingly, we affirm the trial court's final judgment holding Defendants liable for unfair and deceptive trade practices.
IV. Motion for Leave to Amend
In the middle of trial, Defendants filed a motion to amend their responsive pleading to "conform to the evidence" by adding counterclaims for unjust enrichment, violation of Chapter 75, and punitive damages arising out of Faucette's refusal to pay dues to the condominium association. The *325 trial court orally denied this motion. We hold that the trial court's denial was well within its sound discretion.
Rule 15(b) of the North Carolina Rules of Civil Procedure states that "[w]hen issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." N.C. R. Civ. P. 15(b) (2013). We review the denial of a Rule 15(b) motion for abuse of discretion. Marina Food Assocs., Inc. v. Marina Restaurant, Inc., 100 N.C.App. 82, 89, 394 S.E.2d 824, 828 (1990).
In denying Defendants' motion, the trial court noted that Defendants sought to add "fairly substantial claims: Unjust enrichment, Chapter 75, et cetera" for the first time in the middle of trial. The court also stated that any evidence relating to those claims was not "tried by the express or implied agreement of the parties. In fact, there's been vociferous ... there's been, you know, strong argument against" admission of that evidence. Finally, the court stated that "I don't agree that it advances the interest of justice to [grant leave to amend]."
Given Defendants' failure to seek leave to add these claims earlier in the proceedings, and the trial court's finding-a correct one, in our review of the record-that Faucette did not expressly or impliedly consent to try these claims as part of the case, we hold that the trial court's denial of leave to amend was within its sound discretion to manage the course of the trial proceedings.
*278 V. Award of Attorneys' Fees
a. Trial Court's Award
Defendants next argue that the trial court abused its discretion in awarding attorneys' fees to Faucette's counsel. Defendants claim that the trial court's findings of fact and supporting record evidence do not support the court's conclusions of law that Defendants refused to fully resolve the dispute, that Defendants acted willfully, or that Faucette met his burden to recover attorneys' fees under N.C. Gen.Stat. § 75-16.1 (2013). We disagree.
A trial court may award reasonable attorneys' fees to a prevailing party under Chapter 75 upon finding, in relevant part, that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." Id. § 75-16.1(1). "The decision whether or not to award attorney fees under section 75-16.1 rests within the sole discretion of the trial judge. And if fees are awarded, the amount also rests within the discretion of the trial court." Printing Servs. of Greensboro, Inc. v. Am. Capital Grp., Inc., 180 N.C.App. 70, 81, 637 S.E.2d 230, 236 (2006), aff'd, 361 N.C. 347, 643 S.E.2d 586 (2007) (internal quotation marks omitted).
This Court employs a two-pronged standard of review in considering a trial court's award of fees pursuant to N.C. Gen.Stat. § 75-16.1(1). See, e.g., Country Club of Johnston Cnty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C.App. 231, 248-49, 563 S.E.2d 269, 280-81 (2002). First, we determine whether any competent evidence supports the trial court's findings of fact and whether these findings support the court's conclusions of law. See id. Second, we review the trial court's fee award for abuse of discretion. See id. at 249, 563 S.E.2d at 281. A trial court abuses its discretion only when its award of fees is "manifestly unsupported by reason or wholly arbitrary." Id.
We hold that the trial court did not err in concluding that Defendants' refusal to return the $5,000 was unwarranted. Defendants again attempt to focus this Court's attention on the March 2011 settlement letter and other settlement negotiations, arguing that "the record is full of undisputed evidence of ongoing efforts of Winer to fully resolve Faucette's conversion claim." But as the trial court properly found, all of those purported efforts to resolve the claim imposed conditions-that is, they demanded that Faucette also make some concessions or agree to release or waive potential liability. The record discloses no effort by Defendants to unconditionally pay the $5,000 until years after this *279 litigation began. Thus, the trial court's findings support its conclusion that Defendants' *326 refusal to resolve this dispute was unwarranted.
The trial court likewise did not err in concluding that Defendants' conduct was willful. An act is "willful" within the meaning of N.C. Gen.Stat. § 75-16.1(1) if it is "done voluntarily and intentionally with the view to doing injury to another." Standing v. Midgett, 850 F.Supp. 396, 404 (E.D.N.C.1993). Here, the trial court made numerous unchallenged findings regarding Defendants' willful conduct, and Defendant Winer admitted in his sworn deposition testimony that he intentionally withheld the $5,000 despite knowing that these funds belonged to Faucette. Accordingly, the trial court's conclusion of willfulness is supported by its findings.
Finally, we hold that the trial court did not abuse its discretion in selecting the amount of attorneys' fees to award Faucette's counsel. The trial court made detailed findings regarding "the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney." Shepard v. Bonita Vista Props., L.P., 191 N.C.App. 614, 626, 664 S.E.2d 388, 396 (2008). Accordingly, we affirm the trial court's award of attorneys' fees pursuant to N.C. Gen.Stat. § 75-16.1(1).
b. Fees on Appeal
Faucette also requests an award of attorneys' fees incurred during this appeal. In previous Chapter 75 cases, we have held that "[u]pon a finding that [appellees] were entitled to attorney's fees in obtaining their judgment [under N.C. Gen.Stat. § 75-16.1 ], any effort by [appellees] to protect that judgment should likewise entitle them to attorney's fees." Willen v. Hewson, 174 N.C.App. 714, 722, 622 S.E.2d 187, 193 (2005) (internal quotation marks omitted). "[B]ecause plaintiffs were entitled to attorneys' fees for hours expended at the trial level, plaintiffs are entitled to attorneys' fees on appeal." Id. at 723, 622 S.E.2d at 193. Accordingly, we remand to the trial court for a determination of the hours spent on appeal and a reasonable hourly rate, and for the entry of an appropriate attorneys' fee award.
Conclusion
We affirm the trial court's judgment.
AFFIRMED AND REMANDED.
Chief Judge McGEE and Judge HUNTER, JR. concur.

Faucette has filed a motion with this Court seeking leave to request the trial court correct the order pursuant to N.C. Gen.Stat. § 1A-1, Rule 60(a) (2013). In light of our holding, we deny this motion as moot.