IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-532

Filed: 1 August 2017

Nash County, No. 14-CVS-1152

NASH HOSPITALS, INC., Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Defendant.

Appeal by Defendant from an order entered 15 February 2016 by Judge Cy Grant in Nash County Superior Court. Heard in the Court of Appeals 15 November 2016.

*Creech Law Firm, P.A., by J. Christopher Dunn, for Plaintiff-Appellee.*

*Butler Snow LLP, by Scott Lewis and Pamela L. Carter, for Defendant-Appellant.*

INMAN, Judge.

This appeal arises from a $757 hospital bill. It concerns an insurance company's payment of a total settlement directly to a *pro se* personal injury claimant by check made payable jointly to the claimant and two of her medical providers, each of which held valid liens on the settlement funds. We affirm the trial court's ruling, in granting summary judgment for a lienholder, that the insurance company violated the North Carolina medical lien statutes by failing to retain funds subject to medical liens and committed an unfair or deceptive trade practice by failing to pay directly to

the lienholder its *pro rata* share of funds for several months despite repeated demands. Because the trial court miscalculated the statutory amount required to satisfy the lien, however, we vacate that portion of the judgment and remand for entry of judgment in an amount consistent with the statute and this opinion.

State Farm Mutual Automobile Insurance Company ("Defendant") appeals from an order granting summary judgment in favor of Nash Hospitals, Inc. ("Plaintiff" or "Nash Hospitals") and denying Defendant's motion for summary judgment. Defendant argues that its issuance to a *pro se* personal injury claimant of a check for a total settlement—without retaining funds owed to medical lienholders— did not violate N.C. Gen. Stat. §§ 44-50 and 44-50.1 because the check was made payable jointly to the claimant and the lienholders. Defendant also argues that the trial court erred in concluding that Defendant committed an unfair or deceptive trade practice, in part because Nash Hospitals suffered no injury as a result of Defendant's issuance of the multi-party check to the claimant. After careful review, we affirm the trial court's order in part and vacate and remand the trial court's order in part.

## Facts and Procedural Background

The undisputed facts are as follows:

On 9 April 2013, Jessica Whitaker ("Whitaker") was injured in an automobile accident caused by Defendant's insured, Christopher Helton ("Helton").

Whitaker incurred $2,272 in medical expenses following the accident. The majority of these expenses—$1,515—was for treatment at Rocky Mount Chiropractic ("Rocky Mount"); the remaining $757 was for treatment at Nash Hospitals.

On 10 May 2013, counsel for Nash Hospitals sent Defendant a notice of medical lien pursuant to N.C. Gen. Stat. §§ 44-49 and 44-50. A month later, Rocky Mount sent a similar notice of medical lien to Defendant.

Defendant evaluated Whitaker's claims and questioned whether all Whitaker's medical treatment was related to the accident. Defendant negotiated with Whitaker and reached a settlement on 28 October 2013 for $1,943. The settlement amount was insufficient to satisfy the medical liens in full.

On 10 December 2013, Defendant received Whitaker's signed release for the settlement and sent her a check for $1,943, made payable to Whitaker, Nash Hospitals, and Rocky Mount. Whitaker did not present the settlement check to Nash Hospitals, nor did Defendant notify Nash Hospitals of the settlement.

In February 2014, an employee of Nash Hospitals contacted Defendant regarding Whitaker's claim and Nash Hospitals' lien. Defendant's representative disclosed that it had reached a settlement with Whitaker and had delivered to her a check payable to Whitaker, Nash Hospitals, and Rocky Mount. Defendant's representative said the multi-party check protected Nash Hospitals' lien and told Nash Hospitals' employee to contact Whitaker.

On 13 March 2014, counsel for Nash Hospitals sent a letter to Defendant asserting that Defendant's issuance of the multi-party check violated North Carolina law, noting that N.C. Gen. Stat. § 44-50 "specifically requires the liability insurer to retain out of any recovery, *before any disbursements*, a sufficient sum to pay lien holders." (emphasis in original). The letter also asserted that "by issuing a check that can't be cashed by the patient, State Farm is forcing the patient to obtain an attorney and incur unnecessary expense." Defendant did not respond.

In April 2014, Nash Hospitals made a third unsuccessful attempt to collect on its lien from Defendant.

On 25 August 2014, Nash Hospitals filed a verified complaint against Defendant alleging violations of N.C. Gen. Stat. §§ 44-49 and 44-50 and alleging that Defendant engaged in an unfair or deceptive trade practice. On 19 September 2014, Defendant asked Whitaker to return the uncashed multi-party check, and on 17 November 2014, Defendant issued a check payable solely to Nash Hospitals for $757, the total amount of Nash Hospitals' lien. Nash Hospitals did not agree to accept the payment as satisfaction of the lawsuit or the underlying lien. Both parties then filed motions for summary judgment.

On 15 February 2016, the trial court issued an order granting Nash Hospitals' motion for summary judgment and denying Defendant's motion for summary judgment. The trial court found damages in the full amount of the lien—$757—and

awarded Nash Hospitals treble damages pursuant to N.C. Gen. Stat. § 75-16 for a total award of $2,271. Defendant timely filed notice of appeal.

**Analysis**

**I. Standard of Review**

The standard of review for an appeal from summary judgment is *de novo. In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted). Summary judgment is appropriate "only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Id.* at 573, 669 S.E.2d at 576 (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007)). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted). "Evidence properly considered on a motion for summary judgment 'includes admissions in the pleadings, depositions on file, answers to Rule 33 interrogatories, admissions on file[,] . . . affidavits, and any other material which would be admissible in evidence or of which judicial notice may properly be taken.' " *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 8, 472 S.E.2d 358, 362 (1996) (alteration in original) (quoting *Kessing v. Nat'l Mortg. Corp.*, 278 N.C. 523, 533, 180 S.E.2d 823, 829 (1971)).

The material facts are undisputed. Therefore, we examine the applicable law to determine whether either party was entitled to judgment as a matter of law.

## II. Violation of N.C. Gen. Stat. §§ 44-50 and 44-50.1

Once Defendant received proper notice of Nash Hospitals' lien and agreed to a negotiated settlement with Whitaker, Nash Hospitals was entitled—under North Carolina's medical lien statutes—to receive payment from Defendant for a *pro rata* portion of its unpaid bill before Defendant disbursed funds to Whitaker. Defendant argues that the statutes do not prohibit an insurance company from issuing a check payable jointly to a claimant and her medical lienholders in lieu of directly paying the lienholders, and that its issuance of the multi-party check did not amount to a disbursement of funds. For the reasons explained below, we disagree.

Chapter 44, Article 9 of the General Statutes contains a series of statutes enacted by the General Assembly to help medical providers recover payment for services rendered to patients who later collect compensation for medical treatment resulting from a personal injury incident. N.C. Gen. Stat. § 44-49 creates a lien "upon any sums recovered as damages for personal injury in any civil action in this State."[1] Section 44-50 provides, *inter alia*,

> A lien as provided under [N.C. Gen. Stat. §] 44-49 shall also attach upon all funds paid to any person in compensation

---

[1] N.C. Gen. Stat. § 44-49 applies to settlement agreements between insurance companies and victims of personal injury incidents. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 157 N.C. App. 596, 602, 580 S.E.2d 46, 50 (2003), *rev'd per curiam on other grounds by* 358 N.C. 725, 599 S.E.2d 905 (2004) (internal quotation marks and citation omitted).

> for or settlement of the injuries, whether in litigation or otherwise. . . . *Before their disbursement*, any person that receives those funds *shall retain* out of any recovery or any compensation so received *a sufficient amount to pay the just and bona fide claims* for any drugs, medical supplies, ambulance services, services rendered by any physician, dentist, nurse, or hospital, or hospital attention or services, after having received notice of those claims.

N.C. Gen. Stat. § 44-50 (2015) (emphasis added). Section 44-50 further dictates that "[t]he lien provided for shall in no case, exclusive of attorneys' fees, exceed fifty percent (50%) of the amount of damages recovered." *Id.* If the total liens are in excess of fifty percent of the recovery, fifty percent of the recovery will be distributed on a *pro rata* basis to valid lienholders while the remaining recovery is disbursed to the claimant. N.C. Gen. Stat. § 44-50.1. By enacting the retention requirement in Section 44-50 and the *pro rata* distribution structure in Section 44-50.1—the General Assembly removed the guesswork and negotiation process surrounding liens created under Section 44-49, furthering the statute's intent of protecting hospitals and medical providers.

Our Court has held that the "obvious intent of [N.C. Gen. Stat. §§ 44-49 and 44-50] is to protect hospitals that provide medical services to an injured person who may not be able to pay but who may later receive compensation for such injuries which includes the cost of the medical services provided." *Smith*, 157 N.C. App. at 602, 580 S.E.2d at 50 (internal quotation marks and citation omitted). *Smith* held that "[u]pon consideration of both the language and purpose of the statutes . . . a lien

against the settlement proceeds received by a *pro se* injured party arises by operation of law, and is perfected when the insurer has 'received notice' of the 'just and bona fide claims' of the medical service provider." *Id.* at 602-03, 580 S.E.2d at 51.

Defendant concedes that N.C. Gen. Stat. § 44-50 requires insurance companies to retain sufficient funds to pay valid liens before disbursing settlement funds directly to a claimant. *See Charlotte-Mecklenburg Hosp. v. First of Ga. Ins. Co.*, 340 N.C. 88, 90-91, 455 S.E.2d 655, 657 (1995) ("If the plaintiff under [N.C. Gen. Stat.] § 44-50 is to have a lien '[s]uch . . . as provided for in [N.C. Gen. Stat.] § 44-49' the lien should attach before the insurance company makes its payments and when the parties agree upon a settlement.") (second alteration in original). But Defendant contends that by issuing a multi-party check that could not be cashed without Nash Hospitals' authorization, it did not "disburse" any funds, and therefore did not violate Section 44-50.

N.C. Gen. Stat. §§ 44-49 *et seq.* do not expressly define a disbursement of funds or specify acceptable methods of payment to comply with the statutory provisions. *Charlotte-Mecklenburg* and *Smith* each concerned an insurance company's issuance of a check payable only to the claimant. *Charlotte-Mecklenburg Hosp.*, 340 N.C. at 90-91, 455 S.E.2d at 657; *Smith*, 157 N.C. App. at 602, 580 S.E.2d at 50. Therefore, we are presented with an issue of first impression. The overall statutory language, other relevant statutes, and controlling appellate decisions interpreting the General

Assembly's intent persuade us that an insurance company's failure to retain, for payment directly to medical lienholders, their share of proceeds from a settlement with a *pro se* claimant violates these statutes.

Our Court has held that "[b]ecause sections 44-49 and 44-50 'provide rather extraordinary remedies in derogation of the common law . . . they must be strictly construed.'" *N.C. Baptist Hosps., Inc. v. Crowson*, 155 N.C. App. 746, 749, 573 S.E.2d 922, 924 (2003) (quoting *Ellington v. Bradford*, 242 N.C. 159, 162, 86 S.E.2d 925, 927 (1955)). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 576 (1974) (citation omitted). "However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citation omitted).

Our General Statutes define a "check" as "(i) a draft, other than a documentary draft, payable on demand and drawn on a bank or (ii) a cashier's check or teller's check." N.C. Gen. Stat. § 25-3-104(f) (2015). A "draft" is a negotiable instrument that orders the payment of funds. N.C. Gen. Stat. § 25-3-104(c). A negotiable instrument is "an unconditional promise or *order to pay a fixed amount of money*[.]" N.C. Gen.

Stat. § 25-3-104(a) (emphasis added). Regardless to whom a check is addressed, it is by definition a draft, which is by definition a negotiable instrument. *See* N.C. Gen. Stat. §§ 25-3-104(e)-(f). The underlying principle behind this definition is that upon issuing a check, the drafter is relinquishing control over the funds to be drafted.

Here, Defendant lost control over the funds, as evidenced by its need to retrieve the check prior to re-disbursing funds directly to Nash Hospitals, at the time it issued the check to Whitaker. While Defendant argues that the check did not become negotiable until the parties to whom it was addressed reached an agreement regarding the distribution of funds, there were no additional actions necessary for Defendant to take before the funds could be withdrawn. The risks that Whitaker, or any *pro se* claimant who has received a settlement check, would shortcut the process by obtaining forged signatures for the lienholders or would, like Whitaker, simply not seek to negotiate the check, leaving the valid liens unenforced, are the consequences beyond the control of a settlement payor that the medical lien statutes were intended to avoid. We are satisfied that Defendant's effective loss of control over the funds amounted to a disbursement for the purposes of N.C. Gen. Stat. § 44-50.

An insurance company can hardly protect the interests of medical lienholders—which is the undisputed intent of the statutes—by relying on a *pro se* claimant to notify them of a multi-party check in an amount insufficient to cover the

liens. Without the advice of counsel,[2] a *pro se* claimant has little incentive to notify the lienholders of the settlement or to seek their cooperation to cash the check. If the multi-party check is never cashed and the lienholders do not make a demand as Nash Hospitals did here, the insurance company ultimately avoids its settlement obligation.

The settlement between Defendant and Whitaker resulted in insufficient funds to cover the valid liens in full, and Defendant, as a result, had a duty to retain sufficient funds—not to exceed fifty percent of the settlement—to satisfy those liens and to distribute those funds to the lienholders on a *pro rata* basis prior to disbursing the remaining funds to Whitaker. N.C. Gen. Stat. §§ 44-50 and 44-50.1. By issuing the multi-party check for the total settlement amount rather than issuing a check solely payable to Nash Hospitals to satisfy its lien, Defendant violated N.C. Gen. Stat. § 44-50's provision requiring the retention of funds sufficient to satisfy Nash Hospitals' lien created under N.C. Gen. Stat. § 44-49, for which Defendant had proper notice. Accordingly, the trial court did not err in granting Nash Hospitals' motion for summary judgment and denying Defendant's motion for summary judgment for violation of N.C. Gen. Stat. §§ 44-50 and 44-50.1.

### III. Unfair or Deceptive Trade Practices

---

[2] Counsel would have advised Whitaker that N.C. Gen. Stat. § 44-50 limits the recovery of medical lienholders to a *pro rata* share of no more than fifty percent of a personal injury claimant's recovery. There is no indication in the record that Whitaker was aware of this limitation on Plaintiff's lien.

Defendant next argues that the trial court erred by granting Nash Hospitals' motion for summary judgment and denying Defendant's motion for summary judgment on Nash Hospitals' unfair or deceptive trade practice claim. Defendant asserts that: (1) Nash Hospitals was not in privity of contract with Defendant and therefore was not permitted to bring an unfair or deceptive trade practices claim, (2) the undisputed facts did not establish that Defendant engaged in "immoral, unscrupulous, or deceptive conduct," and (3) the undisputed facts did not establish that an actual injury to Nash Hospitals proximately resulted from the alleged unfair or deceptive conduct. We disagree.

" '[U]nder [N.C. Gen. Stat.] § 75-1.1, it is a question for the jury as to whether [the defendants] committed the alleged acts, and then it is a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade practice.' " *Richardson v. Bank of America, N.A.*, 182 N.C. App. 531, 540, 643 S.E.2d 410, 416 (2007) (first alteration in original) (quoting *United Lab., Inc. v. Kuykendall*, 322 N.C. 643, 664, 370 S.E.2d 375, 389 (1988) (citation omitted)). To succeed on an unfair or deceptive trade practice claim, a plaintiff must show: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711 (citation omitted).

*1. Privity To Bring Suit*

As an initial matter, Defendant argues that Nash Hospitals is unable to bring an unfair or deceptive trade practice claim because this suit does not involve a dispute over an insurance contract. We disagree.

In *Wilson v. Wilson*, 121 N.C. App. 662, 665, 468 S.E.2d 495, 497 (1996), this Court held that "North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices under [N.C. Gen. Stat.] § 75-1.1." The *Wilson* holding arose out of an instance in which the "plaintiff [was] neither an insured nor in privity with the insurer." *Id.* at 665, 468 S.E.2d at 497. The Court reasoned that "allowing such third-party suits against insurers would encourage unwarranted settlement demands, since [the] plaintiffs would be able to threaten a claim for an alleged violation of [N.C. Gen. Stat.] § 58-63.15 in an attempt to extract a settlement offer." *Id.* at 666, 468 S.E.2d at 498.

Our Courts have defined "privity" as "a [d]erivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest." *Murray*, 123 N.C. App. at 15, 472 S.E.2d at 366 (alteration in original) (internal quotation marks and citations omitted). Additionally, "[o]ur case law establishes that ' "[i]f the third party is an intended beneficiary, the law implies privity of contract." ' " *Id.* at 15, 472 S.E.2d at 366 (quoting *Coastal Leasing Corp. v.*

*O'Neal*, 103 N.C. App. 230, 236, 405 S.E.2d 208, 212 (1991) (quoting *Johnson v. Wall*, 38 N.C. App. 406, 410, 248 S.E.2d 571, 574 (1978))).

In the context of insurance disputes following an incident resulting in a personal injury, "[t]he injured party in an automobile accident is an intended third-party beneficiary to the insurance contract between insurer and the tortfeasor/insured party." *Murray*, 123 N.C. App. at 15, 472 S.E.2d at 366 (citations omitted). By enacting N.C. Gen. Stat. §§ 44-49 *et seq.*, the General Assembly expanded the scope of privity to hospitals and medical service providers. As discussed *supra*, the purpose of N.C. Gen. Stat. §§ 44-49 *et seq.* is to protect hospitals and other health care providers that provide medical services to injured persons who may be unable to pay at the time the services are rendered, but who may later receive compensation for their injuries. *Smith*, 157 N.C. App. at 602, 580 S.E.2d at 50. Therefore, Nash Hospitals' privity became effective the moment Defendant received notice from Nash Hospitals of its assertion of a valid lien pursuant to N.C. Gen. Stat. § 44-49 *and* reached a settlement agreement with Whitaker.

This conclusion is further supported by the Supreme Court's decision in *Smith v. State Farm Mut. Auto. Ins. Co.* 358 N.C. at 725, 599 S.E.2d at 905. The Supreme Court, by adopting the reasoning in the dissent, overruled this Court's determination in *Smith* that the medical provider had failed to perfect its lien under N.C. Gen. Stat. § 44-49, but it did not overrule the underlying rationale that once a lien is perfected,

an insurance company is required to first pay the medical providers before disbursing the remaining funds directly to a *pro se* personal injury claimant. *Id.* at 725, 599 S.E.2d at 905; *Smith*, 157 N.C. App. at 606, 580 S.E.2d at 52-53 (Levinson, J. dissenting).

Here, Nash Hospitals is challenging Defendant's post-settlement conduct, which removes the policy concerns asserted in *Wilson* from consideration. Defendant was on notice following the *Smith* decisions of its duty to settle valid Section 44-49 liens before disbursing funds directly to a *pro se* claimant. Nash Hospitals provided Defendant with the required documentation that "(1) constitutes a valid assignment of rights signed by the injured; or (2) contains unambiguous language that the medical provider is asserting a lien under the provisions of [N.C. Gen. Stat.] §§ 44-49 and 44-50, or language asserting an interest in or claim to settlement proceeds." *Smith*, 157 N.C. App. at 608, 580 S.E.2d at 54 (Levinson, J., dissenting). Accordingly, we hold Nash Hospitals was in privity with Defendant and is permitted to assert a claim for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1.

2. *Unfair or Deceptive Act*

Whether Defendant's violation of N.C. Gen. Stat. §§ 44-49 and 44-50 and refusal to pay Nash Hospitals' lien before disbursing settlement funds to a *pro se* claimant amounts to an unfair or deceptive act is an issue of first impression. It

requires a determination of whether: (a) the alleged acts occurred, and (b) the acts

are unfair or deceptive pursuant to N.C. Gen. Stat. § 75-1.1.

*a. Occurrence of the Alleged Acts*

Defendant challenges the trial court's recitation of Undisputed Facts numbers

7 and 10 as being unsupported by the evidence.

The trial court's Undisputed Fact number 7 states:

> Defendant has a general business practice of issuing multi-party checks in lieu of retaining funds to pay valid medical lien holders and said practice is authorized by its internal written policies and procedures provided to all claim representatives.

The trial court may have surmised this Undisputed Fact based on Defendant's

counsel's argument that the payment to Whitaker was consistent with "the way it

has routinely been done with other hospitals and other chiropractors" and that "the

three parties agree of [sic] who's going to get what." Defendant correctly notes that

the arguments of counsel are not a proper substitute for evidence necessary to support

a motion for summary judgment. *Strickland v. Doe*, 156 N.C. App. 292, 297, 577

S.E.2d 124, 129 (2003) ("The trial court may also consider arguments of counsel as

long as the arguments are not considered as facts or evidence.") (citations omitted).[3]

But the challenged Undisputed Fact is immaterial, and accordingly any error in this

---

[3] Defendant's assertion in its brief before this Court that it issued a multi-party check to Whitaker in "direct response" to the *Charlotte-Mecklenburg* and *Smith* decisions also suggests a general business practice, but the existence of a general practice is not material to our analysis.

regard is not a ground for reversal. *See Faucette v. 6303 Carmel Rd., LLC*, __ N.C. App. __, __, 775 S.E.2d 316, 324 (2015).

Even an isolated occurrence can constitute an unfair business practice, so long as the occurrence falls within the definition of "commerce" provided by N.C. Gen. Stat. § 75-1.1. *Id.* at __, 775 S.E.2d at 324 (affirming the trial court's final judgment that the defendants were liable for an unfair or deceptive trade practice by "[w]ithholding money owed from an insurance carrier's settlement payment in order to force the rightful recipient of those funds to resolve other, unrelated business disputes . . .."). It is undisputed that Defendant issued the multi-party check to Whitaker in December 2013 without retaining funds required to satisfy Nash Hospitals' lien and then failed to tender payment to satisfy the lien until November 2014—nearly a year after settling Whitaker's claim and several months after Nash Hospitals' repeated demands for payment went unanswered, resulting in the commencement of this action. Whether Defendant's conduct is a "general business practice" is irrelevant to whether Defendant engaged in an unfair or deceptive trade practice regarding its actions with this plaintiff. Accordingly, we hold Defendant's argument as to the trial court's Undisputed Fact number 7 without merit.

The trial court's Undisputed Fact number 10 states:

> Defendant repeatedly refused to reissue a check payable solely to Plaintiff despite Plaintiff's assertion N.C. Gen. Stat. §§ 44-50 and 50.1 required Defendant to do so.

A review of the record indicates that there was sufficient evidence to support this Undisputed Fact. Nash Hospitals presented letters it sent to Defendant requesting payment of the lien, admissions by Defendant of receipt of those letters, and Defendant's admission of its failure to respond to Nash Hospitals' requests. Moreover, whether Defendant "refused" to satisfy Nash Hospitals' lien for several months or simply ignored its demand for payment for several months, or even in "good faith" believed that it was not required to satisfy the lien also is not dispositive. As discussed *infra,* good faith is not a defense to a claim of unfair or deceptive trade practices. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). We therefore reject Defendant's argument.

### b. *Unfairness and Deceptiveness of the Acts*

"A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711 (citations omitted). "[U]nfairness" is broader than and includes the concept of "deception." *Overstreet v. Brookland, Inc.*, 52 N.C. App. 444, 279 S.E.2d 1 (1981).

"The term 'unfair' has been interpreted by our Courts as meaning a practice which offends established public policy, and which can be characterized by one or more of the following terms: 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Murray*, 123 N.C. App. at 9, 472 S.E.2d at 362 (quoting *Miller v. Nationwide Mut. Ins. Co.*, 112 N.C. App. 295, 301, 435 S.E.2d

537, 542 (1994)). "[T]he fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and actual effects on others." *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 400, 248 S.E.2d 739, 744 (1978), *disc. rev. denied*, 296 N.C. 411, 251 S.E.2d 469 (1979).

When "an insurance company engages in conduct manifesting an inequitable assertion of power or position, that conduct constitutes an unfair trade practice." *Murray*, 123 N.C. App. at 9, 472 S.E.2d at 362 (citing *Johnson v. Beverly-Hanks & Assocs., Inc.*, 328 N.C. 202, 208, 400 S.E.2d 38, 42 (1991)); *see also Pittman v. Hyatt Coin & Gun, Inc.*, 224 N.C. App. 326, 329, 735 S.E.2d 856, 858 (2012) (" 'A party is guilty of an unfair act or practice when it engages in conduct which amounts to an inequitable assertion of its power or position.' ") (quoting *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 264, 266 S.E.2d 610, 622 (1980) (citations omitted), *overruled in part on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988)). Our Supreme Court has held that because ordinarily "unfairness and deception are gauged by consideration of the effect of the practice on the marketplace, it follows that the intent of the actor is irrelevant. Good faith is equally irrelevant. What is relevant is the effect of the actor's conduct on the

consuming public." *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403 (holding that "good faith is not a defense to an alleged violation of [N.C. Gen. Stat. §] 75-1.1").

Defendant's failure to notify the medical lienholders of its settlement, and Defendant's direction of Nash Hospitals for months to seek its recovery from Whitaker were not only unfair, but also deceptive. A trade practice is deceptive if it has the capacity or tendency to deceive. *Marshall*, 302 N.C. at 548, 276 S.E.2d at 404 (citation omitted). If Nash Hospitals had contacted Whitaker and obtained her cooperation, it still could not satisfy its lien without also contacting Rocky Mount and obtaining its cooperation.

Defendant's unfair and deceptive conduct arose out of its violation of N.C. Gen. Stat. §§ 44-50 and 44-50.1 and its repeated failure to settle a medical provider's valid lien upon request. It is undisputed that Defendant issued a multi-party check to Whitaker as purported resolution of her liability claim and for Nash Hospitals' medical lien without Nash Hospitals' knowledge or consent. Defendant also repeatedly failed to settle the medical lienholder's lien upon request and refused to reissue a check made payable solely to the lienholder prior to the commencement of this action. Defendant's failure to protect Nash Hospitals' valid lien by retaining the requisite funds before disbursing the remaining settlement payment to Whitaker defeated the purpose of N.C. Gen. Stat. §§ 44-50 and 44-50.1. This conduct violated the established public policy of North Carolina's medical lien statutes and amounted

to an inequitable assertion of Defendant's power as an insurer, which effectively deprived Nash Hospitals, as well as Rocky Mount and Whitaker, of the funds to which each was entitled by law. We hold that this conduct amounts to an unfair or deceptive trade practice, but note that our holding does not establish violations of N.C. Gen. Stat. § 44-49 *et. seq.* as *per se* unfair or deceptive trade practices. It is the culmination of Defendant's violation and its failure to cure the violation absent litigation that support the trial court's ruling, which we affirm.

*3. In or Affecting Commerce*

We are satisfied that the activity in question here falls within the definition of "commerce" pursuant to N.C. Gen. Stat. § 75-1.1(b) (2015)—"all business activities, however denominated, but [not including] professional services rendered by a member of a learned profession." We note that "[o]ur courts have repeatedly defined the insurance business as affecting commerce, when an insurer provides insurance to a consumer purchasing a policy." *Murray*, 123 N.C. App. at 10, 472 S.E.2d at 363 (citing *Pearce v. Am. Def. Life Ins. Co.*, 316 N.C. 461, 469, 343 S.E.2d 174, 179 (1986)).

*4. Proximate Injury*

In addition to showing that a defendant's conduct is unfair or deceptive and affecting commerce, "a plaintiff must have 'suffered actual injury as a proximate result of defendant's deceptive [conduct].'" *Ellis v. N. Star Co.*, 326 N.C. 219, 226, 388 S.E.2d 127, 131 (1990) (quoting *Pearce*, 316 N.C. at 471, 343 S.E.2d at 180).

Here, Defendant's failure to withhold funds subject to valid medical liens, including Nash Hospitals' lien, prior to its disbursement of funds to Whitaker resulted in an actual injury to Nash Hospitals. Nash Hospitals was entitled to a *pro rata* share of fifty percent of the settlement proceeds, as directed by N.C. Gen. Stat. §§ 44-50 and 44-50.1, *before* any funds were disbursed to Whitaker. Defendant's failure to retain funds delayed Nash Hospitals' recovery of funds to which it was legally entitled. That delay constitutes injury. Accordingly, we hold that the trial court did not err in concluding that Defendant committed an unfair trade practice pursuant to N.C. Gen. Stat. § 75-1.1.

**IV. Damages**

Defendant correctly argues that because the fifty percent of the settlement proceeds subject to medical liens was insufficient to satisfy the liens of Nash Hospitals and Rocky Mount, Nash Hospitals' lien was enforceable for no more than its *pro rata* share of lien funds, which amounted to $323.69.

In *N.C. Baptist Hosps. Inc. v. Crowson*, 155 N.C. App. 746, 748, 573 S.E.2d 922, 923 (2003), this Court held that "sections 44-49 and 44-50 do not require a *pro rata* disbursement of funds" to valid medical lienholders when there was insufficient funds to compensate all the lienholders. The dispute in *Baptist Hospitals* arose after an attorney disbursed funds from the settlement of a personal injury incident in favor of two medical lienholders to the detriment of the third. *Id.* at 747, 573 S.E.2d at 922-

23. However, the General Assembly subsequently amended Article 9 of Chapter 44 of the General Statutes to include the following provision entitled "Accounting of disbursements; attorney's fees to enforce lien rights" which states, *inter alia*:

> (a) Notwithstanding any confidentiality agreement entered into between the injured person and the payor of proceeds as settlement of compensation for injuries, upon the lienholder's written request and the lienholder's written agreement to be bound by any confidentiality agreements regarding the contents of the accounting, *any person distributing funds to a lienholder under this Article in an amount less than the amount claimed by that lienholder shall provide to that lienholder a certification with sufficient information to demonstrate that the distribution was pro rata and consistent with this Article.*

2003 N.C. Sess. Laws ch. 309, § 1; N.C. Gen. Stat. § 44-50.1 (emphasis added). We interpret this amendment as superseding this Court's holding in *Baptist Hospitals* and requiring a *pro rata* distribution to lienholders in the event that fifty percent of a judgment or settlement amount is insufficient to satisfy all valid medical liens created under N.C. Gen. Stat. §§ 44-49.

Black's Law Dictionary defines *pro rata* as "[p]roportionately; according to an exact rate, measure, or interest." *Black's Law Dictionary* 1415 (10th ed. 2014). A proper determination of *pro rata* distributions under N.C. Gen. Stat. §§ 44-50 and 44-50.1 can be calculated with the following formula:[4]

---

[4] This equation applies to cases involving two valid liens—Lien A and Lien B. But the same formula may be used for any number of liens. The denominator is the aggregate value of all liens.

□□□ □□□□ □□□□□ □□□ □□□□ □

$$= \left(\frac{\square\square\square\square\ \square}{(\square\square\square\square\ \square + \square\square\square\square\ \square)}\right) \times \left(\frac{50\%\ \square\square}{\square\square\square\square\ \square\square\square\square\square\square\square\square\square\square\ \square\square\square\square\square}\right)$$

Here, we can calculate the proper *pro rata* distribution share for Nash Hospitals by first identifying the lien amounts and the total settlement amount. Nash Hospitals' lien was for $757. Rocky Mount's lien was for $1,515. The total settlement agreement was $1,943. Inserting these values in the formula calculates Nash Hospitals' *pro rata* share to be $323.69.

$$\frac{(\$757)}{(\$757 + \$1515)} \times (50\% \times \$1943) = \$323.69$$

When trebled based on the trial court's judgment that Defendant engaged in an unfair or deceptive trade practice, the total damages to which Nash Hospitals is entitled is $971.07. N.C. Gen. Stat. § 75-16. Accordingly, the trial court's calculation of damages awarded to Nash Hospitals was in error. Because the correct calculation is dictated by the undisputed facts and applicable statute, we vacate the trial court's damage award in the summary judgment order and remand for entry of summary judgment in favor of Nash Hospitals for $971.07.

**Conclusion**

For the foregoing reasons, we hold that the trial court did not err in granting summary judgment in favor of Nash Hospitals on its claims pursuant to N.C. Gen. Stat. §§ 44-50 and 44-50.1 and the unfair or deceptive trade practices statutes. Defendant's actions were offensive to public policy—impairing the contractual rights of a *pro se* claimant and her medical providers—and amounted to an inequitable assertion of power. We vacate the portion of the order awarding damages and remand for an award consistent with this opinion. Accordingly, we affirm in part and vacate and remand in part the trial court's order.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.

Judges CALABRIA and ZACHARY concur.